IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION<br><br>Plaintiffs,<br><br>v<br><br>MOSAIC FERTILIZER, LLC,<br><br>Defendant. | ) ) ) ) No. ) ) ) ) CIVIL COMPLAINT ) ) ) ) |

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys acting at the request of the Administrator of the United States Environmental Protection Agency (EPA), together with the Florida Department of Environmental Protection (FDEP), by and through its Office of General Counsel, file this Complaint and allege as follows:

## I.    NATURE OF THIS ACTION

1.    This is a civil action brought pursuant to Section 3008(a) and (g) of the Resource Conservation and Recovery Act (RCRA), 42 United States Code (U.S.C.) § 6928(a) and (g), and pursuant to the Florida Resource Recovery and Management Act, specifically § 403.727, Florida Statutes (F.S.), against Mosaic Fertilizer, LLC, (Mosaic or Defendant). The United States and FDEP (Plaintiffs) seek injunctive relief and the assessment of civil penalties for environmental violations at Mosaic's Bartow, Riverview, Green Bay, New Wales, and South Pierce Facilities, as well as the assessment of civil penalties for environmental violations at Mosaic's Mulberry facility, all of which are located in Florida (respectively the Bartow Facility,

the Riverview Facility, the Green Bay Facility, the New Wales Facility, the South Pierce

Facility, and the Mulberry Facility, collectively the Facilities).

2.      As set forth below, and as set forth in Plaintiffs' RCRA inspection reports or RCRA

notices of violation, Defendant has violated the statutory and regulatory requirements applicable

to the management and disposal of solid and/or hazardous waste, found at

§§ 403.721 and 403.722, F.S., the Florida Resource Recovery and Management Act, and the

regulations promulgated thereunder, including Chapter 62-730 Florida Administrative Code

(F.A.C.) (the corresponding federal citations are Sections 3004 and 3005 of RCRA, 42 U.S.C.

§§ 6924, 6925, and the regulations promulgated thereunder, including 40 C.F.R. Parts 261, 262,

264, 265, 268 and 270).

## II.    PARTIES

3.      Plaintiffs are the United States of America and FDEP.

4.      Defendant Mosaic is incorporated in the State of Delaware, and is licensed to do business

in Florida.

5.      On October 22, 2004, concurrent with the merger of the Cargill fertilizer business with

IMC Global, the name of Cargill Fertilizer, LLC was changed to Mosaic Fertilizer, LLC.

(Mosaic). Mosaic is, and at all times relevant to this lawsuit has been, the owner and operator of

the Facilities.

## III.    JURISDICTION AND VENUE

6.      This Court has jurisdiction over the parties and the subject matter of this action pursuant

to RCRA Section 3008(a), 42 U.S.C. § 6928(a), and 28 U.S.C. §§ 1331 (federal question

jurisdiction), 1332 (diversity), 1345 (jurisdiction when the United States is a plaintiff), 1355

(jurisdiction over penalties arising under federal claims), and 1367 (supplemental jurisdiction).

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1395(a), and RCRA Section 3008(a)(1), 42 U.S.C. § 6928(a)(1), because Defendant is located and is doing business in this District and the violations occurred in this District.

8.      Authority to bring this civil action is vested in the Attorney General of the United States and the Administrator of EPA pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and 28 U.S.C. §§ 516 and 519.

9.      Authority to bring this civil action is vested in FDEP pursuant to §§ 20.255, 403.121, 403.131, 403.727, and 403.805, F.S.

10.     The United States has provided notice to the State of Florida prior to the commencement of this action in accordance with RCRA Section 3008(a)(2), 42 U.S.C. § 6928(a)(2).

## IV.    STATUTORY AND REGULATORY BACKGROUND

11.     Federal regulation of hazardous waste is primarily based on RCRA, enacted on October 21, 1976 to amend the Solid Waste Disposal Act, and on the Hazardous and Solid Waste Amendments (HSWA) enacted by Congress in 1984 to further amend the Solid Waste Disposal Act. RCRA establishes a "cradle-to-grave" program to be administered by the Administrator of EPA and authorized states for regulating the generation, transportation, treatment, storage, and disposal of hazardous waste. See 42 U.S.C. § 6901 *et seq*.

12.     RCRA's Subchapter III (RCRA §§ 3001-3023, 42 U.S.C. §§ 6921-6940, known as "Subtitle C") required EPA to promulgate regulations establishing performance standards applicable to facilities that generate, transport, treat, store, or dispose of hazardous wastes. Together, RCRA Subtitle C and its implementing regulations, set forth at 40 C.F.R. Parts 260 – 279, comprise EPA's RCRA hazardous waste program.

13.     RCRA Section 3006, 42 U.S.C. § 6926, allows the Administrator to authorize a state to administer its own hazardous waste program in lieu of the federal program when the Administrator deems the state program to be equivalent to and consistent with the federal program.

14.     Pursuant to Section 3006(b) of RCRA, 42 U.S.C. § 6926(b), the State of Florida was granted final authorization by EPA to administer and enforce a hazardous waste program on February 12, 1985; on November 17, 2000, the State of Florida was authorized to implement a corrective action program under the HSWA.  Part IV, Resource Recovery and Management, of Chapter 403, F.S., provides statutory authority for the state regulatory program as implemented in Chapter 62-730, F.A.C. "Hazardous Waste," including the regulations that are part of the authorized state program. FDEP is the State agency designated to implement the authorized RCRA program in Florida.

15.     Although EPA has granted the State authority to enforce its own hazardous waste program, EPA retains jurisdiction and authority to initiate an independent enforcement action, pursuant to Section 3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2).

16.     As the authorized provisions of Florida's hazardous waste program operate in lieu of the federal RCRA program, the citations for the violations of those authorized provisions alleged herein will be to the authorized Florida program; however, for ease of reference, the federal citations will follow in parentheses.

17.     F.A.C. Rule 62-730.020 (40 C.F.R. § 261.2) defines a solid waste as any discarded material that is not otherwise excluded under F.A.C. Rule 62-730.030 (40 C.F.R. § 261.4(a)) or that is not excluded by variance. A discarded material is any material which is abandoned, recycled, inherently waste-like, or a military munition. Materials are solid waste, as

4

defined in F.A.C. Rule 62-730.020 (40 C.F.R. § 261.2), if they are abandoned by being disposed

of, burned or incinerated, or accumulated, stored, or treated (but not recycled) before, or in lieu

of, being abandoned by being disposed of, burned, or incinerated.

18.     A solid waste is a hazardous waste if it is not excluded from regulation as a hazardous

waste under F.A.C. Rule 62-730.030 (40 C.F.R. § 261.4(b)) and it exhibits any of the

characteristics of hazardous waste identified in F.A.C. Rule 62-730.030 (40 C.F.R. Part 261,

Subpart C) or it is listed in F.A.C. Rule 62-730.030 (40 C.F.R. Part 261, Subpart D).

19.     Characteristic hazardous wastes are assigned "D" codes in F.A.C. Rule 62-730.030 (40

C.F.R. Part 261, Subpart C) depending on the specific hazardous characteristic that the waste

exhibits. A hazardous waste with a pH of less than or equal to 2.0 or greater than or equal to 12.5

exhibits the characteristic of corrosivity and is assigned the D002 hazardous waste code pursuant

to F.A.C. Rule 62-730.030 (40 C.F.R. § 261.22).

20.     Certain solid wastes from the extraction, beneficiation, and processing of ores and

minerals to generate a saleable product are excluded from the definition of hazardous wastes

pursuant to F.A.C. Rule 62-730.030 (40 C.F.R. § 261.4(b)(7))(the Bevill Exclusion).

21.     "Materials that are saleable, either as raw materials to other types of industrial processes

(e.g. chemical manufacturing such as MAP/DAP) or as finished products, are considered final

products." [54 Fed. Reg. 36,620, September 1, 1989].

22.     While the first saleable product for the phosphoric acid industry is typically 52% to 54%

phosphoric acid with less than 1% solids, which is known as Merchant Grade Acid (MGA), EPA

made it clear during the 1990 rule-making that the Bevill Exclusion can end before MGA is

produced if intermediate mineral products are used as feedstocks to other industrial processes,

such as monoammonium phosphate (MAP), diammonium phosphate (DAP), Superphosphoric

Acid (SPA), Purified Acid, or other chemical manufacturing processes. [*Id.*]

23.     For a mineral processing waste to be excluded under the Bevill Exclusion, it must fall

into one of the twenty specific categories of excluded wastes listed at F.A.C. Rule 62-730.030

(40 C.F.R. § 261.4(b)(7)(ii)).

24.     The Bevill Exclusion applies to only two wastes generated from phosphoric acid mineral

processing operations: "(p)hosphogypsum from phosphoric acid production," (F.A.C. Rule 62-

730.030 (40 C.F.R. § 261.4(b)(7)(ii)(D))), and "process wastewater from phosphoric acid

production" ( F.A.C. Rule 62-730.030 (40 C.F.R. § 261.4(b)(7)(ii)(P))).

25.     Chemical manufacturing wastes, cleaning wastes, air pollution control device

("scrubber") wastes, and wastes generated after the first saleable product are not "process

wastewater from phosphoric acid production" and do not qualify for the Bevill Exclusion.

26.     When Bevill-excluded phosphogypsum and process wastewater from phosphoric acid

production are mixed with hazardous non-excluded wastes, if the resulting mixture continues to

exhibit a hazardous characteristic of the non-excluded waste, then the entire mixture is a

hazardous waste pursuant to the Bevill Mixture Rule, promulgated at F.A.C. Rule 62-730.030

(40 C.F.R. § 261.3(a)(2)(i)).

27.     In addition, if a Bevill-excluded waste is mixed with a listed hazardous waste, the

resultant mixture is a listed hazardous waste pursuant to F.A.C. Rule 62-730.030 (40 C.F.R.

§ 261.3(a)(2)(iv)).

28.     F.A.C. Rule 62-730.180 (40 C.F.R. Parts 264/265) applies to owners and operators of

facilities that treat, store or dispose of hazardous waste.

6

29.    FDEP's (and EPA's) statutes and regulations (as relevant to this Complaint) require that

generators of solid waste and hazardous waste must, among other things:

      a.    Determine whether generated solid wastes are hazardous, F.A.C. Rule 62-

730.030 (40 C.F.R. § 262.11);

      b.    Keep records of hazardous waste determinations, F.A.C. Rule 62-730.160

(40 C.F.R. § 262.40(c));

      c.    Treat, store, and dispose of hazardous waste in compliance with a permit

and other applicable regulatory requirements, or, if they qualify for interim status,

with interim status requirements, including obtaining financial assurance where

applicable, § 403.722, F.S. (Section 3005(a) of RCRA, 42 U.S.C. § 6925(a));

      d.    Meet certain requirements for waste treatment prior to placement or

disposal of hazardous waste on the land, F.A.C. Rule 62-730.183 (40 C.F.R. Part

268).

30.    Pursuant to Sections 3008(a) and (g) and 3006(g) of RCRA, 42 U.S.C. §§ 6928(a) and (g)

and 6926(g), the United States may enforce the federally-approved Florida hazardous waste

program, as well as the federal regulations that remain effective in Florida, by filing a civil action

in United States District Court seeking civil penalties not to exceed $25,000 per day per violation

(prior to January 30, 1997), and injunctive relief.

31.    Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C.

§ 2471, as amended by 31 U.S.C. § 3701, and as provided in 40 C.F.R. Part 19, the amount

specified in the foregoing Paragraph increases to $27,500 per day for each violation occurring

after January 30, 1997, further increases to $32,500 per day for each violation occurring after

March 15, 2004 and further increases to $37,500 per day for each violation occurring after

January 12, 2009. Each day of such violation constitutes a separate violation pursuant to Section 3008(g) of RCRA, 42 U.S.C. § 6928(g).

32.     Pursuant to § 403.727, F.S., FDEP is authorized to enforce its hazardous waste regulations and to seek judicial imposition of penalties of up to $50,000 per day for each violation.

## V.     GENERAL RCRA ALLEGATIONS

33.     Defendant Mosaic is a "person" within the meaning of Section 1004(15) of RCRA, 42 U.S.C. § 6903(15), which includes corporations; and within the meaning of F.A.C. Rule 62-730.020(1) (40 C.F.R.§ 260.10).

34.     Defendant Mosaic is an "owner" and "operator" of the Facilities within the meaning of F.A.C. Rule 62-730.020(1) (40 C.F.R. § 260.10).

35.     The phosphogypsum generated at the Mosaic Facilities meets the definition of "(p)hosphogypsum from phosphoric acid production" at 40 C.F.R. § 261.4(b)(7)(ii)(D) and is therefore a Bevill-excluded waste. Wastewaters generated at the Mosaic Facilities from phosphoric acid production processes, including non-ammoniated animal feed ingredients, are also Bevill-excluded pursuant to 40 C.F.R. § 261.4(b)(7)(ii)(P).

36.     Wastewaters generated at the Mosaic Facilities from processes associated with MAP/DAP production, among others (chemical manufacturing), certain air pollution control scrubbers, and pipe, tank, or other process equipment cleaning and maintenance, are not Bevill-excluded process wastewaters. When these wastes at the Mosaic Facilities exhibit a hazardous characteristic pursuant to F.A.C. Rule 62-730.030(1) (40 C.F.R. Part 261, Subpart C), they are hazardous wastes.

## A. GENERAL NEW WALES FACILITY ALLEGATIONS

### Facility Process Description

37.     The New Wales Facility is a production facility for phosphoric acid, sulfuric acid, DAP,

MAP, granulated monoammonium phosphate (GMAP), and powdered monoammonium

phosphate (PMAP), and the non-ammoniated animal feed ingredients monocalcium phosphate

(Biofos) and tricalcium/defluorinated phosphate (Multifos).

38.     The New Wales Facility has been in operation at its current location since March 1975.

The facility is approximately 2,200 acres in size. The New Wales Facility was originally owned

by IMC Phosphates, but was purchased by Cargill in 2002, which later became Mosaic Fertilizer

on October 22, 2004.

39.     The New Wales Facility manufactures annually approximately 3.9 million tons of MAP,

DAP, GMAP and PMAP through mineral processing and chemical manufacturing methods.

40.     Operations at the New Wales Facility fall into several categories, only some of which are

mineral processing.

41.     At the New Wales Facility, sulfuric acid is reacted with mineral phosphate rock to

produce phosphoric acid (mineral processing). Different concentrations of phosphoric acid are

blended to reach the desired phosphoric acid concentration and then reacted with ammonia to

produce MAP, DAP, GMAP and PMAP (chemical manufacturing).

42.     Biofos is produced by reacting deflourinated phosphoric acid with limestone. The process

wastewater generated from this non-ammoniated animal feed ingredient production is subject to

the Bevill Exclusion.

43.     Multifos, a tricalcium phosphate product primarily used in poultry feed is produced by

combining phosphate rock with soda ash and 45% phosphoric acid (blended from 54%

9

phosphoric acid and pond water). The process wastewater generate from this non-ammoniated animal feed ingredient production is subject to the Bevill Exclusion.

44.     On December 9, 2003, EPA conducted a compliance evaluation inspection (CEI) at the New Wales Facility and received a compact disk containing sampling data on Sulfuric Acid Plant wastes generated from regenerating the ion exchange resin within demineralizer units from July 2002 to the date of inspection.

45.     On November 16-17, 2004, EPA conducted a CEI, and on December 13-15, 2004, EPA conducted a Sampling Investigation (SI) at the New Wales Facility to determine the Facility's compliance with state and federal RCRA requirements.

**Sulfuric Acid Production**

46.     The manufacturing of MAP, DAP, GMAP, PMAP, Biofos, or Multifos at the New Wales Facility begins with the production of sulfuric acid. New Wales produces sulfuric acid in five (5) sulfuric acid plants on-site (designated as Sulfuric Acid Plants #1, #2, #3, #4 and #5). The sulfuric acid is stored in large tanks until piped to the Phosphoric Acid Plant's three reactors for use.

47.     Hazardous waste generated from the New Wales Facility's Sulfuric Acid Plants includes spills and leaks, as well as wastewater from regenerating the ion exchange resin within demineralizer units. The cationic exchange resin is regenerated with sulfuric acid and the anionic exchange resin is regenerated with sodium hydroxide. The New Wales Facility discharged the spills, leaks and corrosive hazardous regeneration wastewater to a concrete ditch that channeled the wastewaters beneath an equipment-cleaning area and a metal walkway before flowing through a spillway into an earthen ditch and then to an unlined earthen surface impoundment called the Stormwater Retention Pond.

48.     Sulfuric acid is also used as an additive to process wastewater to aid in cleaning tanks, pipes, evaporators, and other production equipment.

49.     Sulfuric acid manufacturing and storage is not mineral processing. Wastes generated from this process are not subject to the Bevill Exclusion.

**Phosphoric Acid Production**

50.     Sulfuric acid is piped from the storage tanks in the Sulfuric Acid Plants to three phosphoric acid reactors within a single Phosphoric Acid Plant (designated as the Prayon East Reactor, the Prayon West Reactor, and the Prayon Third Reactor). In the reactors, the sulfuric acid is mixed with phosphate rock to produce weak phosphoric acid [approximately 30% phosphorus pentoxide ($P_2O_5$) (hereafter referred to as weak phosphoric acid)]. A by-product of the reaction is calcium sulfate dihydrate, typically referred to as phosphogypsum. Phosphogypsum is separated from the weak phosphoric acid by filtration. To recover additional weak phosphoric acid, the filtered phosphogypsum is rinsed with process wastewater pumped from the ponds and ditches circling the phosphogypsum stack. After the third rinse with process wastewater, minimal additional phosphoric acid is recoverable from the phosphogypsum, so the rinsed phosphogypsum is mixed with water (slurried) and pumped to the 704-acre South phosphogypsum stack lined with 60-mil high density polyethylene (HDPE) for disposal.

51.     To meet material specifications for phosphate fertilizer production, the New Wales Facility concentrates the 30% phosphoric acid in three stages. The first concentration step is achieved through evaporation, resulting in 40% phosphoric acid. The 40% phosphoric acid is further concentrated to 43% phosphoric acid through another evaporation step. The 43% phosphoric acid is ultimately concentrated to 54% phosphoric acid through a third evaporation step. If MGA is being produced, the solids within the 54% phosphoric acid are reduced to less

11

than one percent. A blend of the 30% phosphoric acid and 54% phosphoric acid is used in the MAP, DAP, GMAP and PMAP production processes described in paragraphs 55- 58 below.

52.     Phosphoric acid production processes leading to the manufacture of MGA are mineral processing.

53.     The diversion of phosphoric acid from MGA production for use in chemical manufacturing (MAP, DAP, GMAP and PMAP) is not mineral processing.

54.     Contaminants are accumulated in the water used throughout production of phosphoric acid up to MGA, resulting in aqueous wastes referred to as "process wastewater." Prior to reuse in the various processes, the process wastewater must be cooled and excess contaminants must be removed. A   majority of the excess contaminants precipitate (settle) from the wastewater as it cools in the phosphogypsum stack system. Approximately 86,600 gallons per minute (gpm) of process wastewater is sent from the phosphoric acid production plant to the phosphogypsum stack system for cooling and contaminant settling.

**Fertilizer Production**

55.     MAP, DAP, GMAP and PMAP fertilizer products are manufactured at the facility in four (4) Plants designated as #1 DAP/MAP, #2 DAP,  #3 GMAP and PMAP (collectively Fertilizer plants).

56.     MAP, DAP and GMAP production consists of reacting a mixture of 30% phosphoric acid and 54% phosphoric acid with anhydrous ammonia in a reactor (pre-neutralizer). The resultant slurry is removed from the pre-neutralizer and pumped into a rotating drum granulator, where the product forms into round, solid, pebble-like granules. This solid material passes through a dryer followed by a system of sizing screens and mills to achieve the desired granule size. The product

is then cooled and stored. It is shipped off-site as bulk granular fertilizer for blending and use on farm crops.

57.     PMAP production consists of reacting phosphoric acid with ammonia in a pipe reactor. The product is then cooled and stored.

58.     Fertilizer plants' production operations are chemical manufacturing, not mineral processing, and as such solid wastes from these operations are not subject to the Bevill Exclusion.

**Air Pollution Control Devices (Phosphoric Acid and Fertilizer Production)**

59.     Air particulates emitted from the phosphoric acid production process are captured ("scrubbed") from the reactors, filters, and other production equipment (e.g. clarifiers and storage tanks) using air pollution control devices commonly referred to as scrubbers. The scrubbing liquid for each of these scrubbers is process wastewater that is pumped from the phosphogypsum stack system through the scrubbers to collect particulate air emissions in a single pass through the scrubber before being discharged directly back into the phosphogypsum stack system.

60.     Most of the ammonia and fugitive air particulates emitted from the pre-neutralizer, granulator, dryer, etc., during DAP/MAP, and PMAP production are captured in a series of scrubbers similar to the phosphoric acid scrubbers described above. Mosaic uses process wastewater from the phosphogypsum stack system in the secondary scrubbers in the #1 DAP/MAP, # 2 DAP, and PMAP plants, and uses fresh water in the scrubber for the #3 GMAP plant, to collect these particulate air emissions. The scrubber effluent is discharged back into the phosphogypsum stack system.

13

61.     The operation of scrubbers is not part of mineral processing, and the wastewater from

these scrubbers are not subject to the Bevill Exclusion. The wastewater from the #3 GMAP plant

scrubber is not hazardous because fresh water is used in the scrubber.

**Pipe and Tank Cleaning**

62.     Mosaic cleans its pipes, tanks, evaporators, and other process equipment throughout the

phosphoric acid and fertilizer production areas on a regular basis, using process wastewater,

phosphogypsum stack system wastewater, or a mixture of either with sulfuric acid as the

cleaning agent. After use, the spent corrosive hazardous cleaning agent is discharged to the

phosphogypsum stack system. Cleaning wastes are generated on a daily basis during normal

plant operations and during scheduled maintenance periods.

63.     Pipe and tank cleaning operations are not part of mineral processing, and the wastewater

from such cleaning operations are not subject to the Bevill Exclusion.

**Spills and Leaks of Sulfuric Acid and Phosphoric Acid**

64.     In Mosaic's phosphoric acid and fertilizer production, spills and leaks of phosphoric acid

and sulfuric acid occur. These spills and leaks commingle with process wastewater being

transported from the production areas to the phosphogypsum stack system.

65.     Spills and leaks of sulfuric acid and phosphoric acid are not part of mineral processing

and are therefore not subject to the Bevill Exclusion.

**Phosphogypsum Stack System**

66.     As described above, Mosaic currently disposes of slurried phosphogypsum in a 704-acre

phosphogypsum stack lined with 60-mil HDPE. The South phosphogypsum stack is located

south of the closed 394-acre unlined North phosphogypsum stack.

14

67.     The closed North phosphogypsum stack and the lined active South phosphogypsum stack described above operate in conjunction with the existing unlined cooling pond system (together this entire system is referred to as the phosphogypsum stack system). The unlined cooling pond system consists of a 280-acre main cooling pond located southeast of the production complex and the north, east, and west cooling channels that circulate process wastewater around the phosphogypsum stacks.  Outside of the footprint of the phosphogypsum stack system, Mosaic operates a 94-acre below-grade auxiliary holding pond. Mosaic operates the phosphogypsum stack system under Industrial Wastewater Facility Permit Number FL0036421 issued by FDEP.

68.     Mosaic's entire New Wales site is encompassed by a comprehensive groundwater monitoring system that is monitored and operated in accordance with an approved groundwater monitoring plan under Industrial Wastewater Facility Permit Numbers FL0036421 and FL0178527 issued by FDEP. The groundwater monitoring program began in 1987, and in 1989, IMC Fertilizer Inc., predecessor to Mosaic, entered into a consent order with the FDEP (then the Florida Department of Environmental Regulation) to evaluate the vertical and horizontal extent of groundwater impacts within and/or beyond its permitted zone of discharge resulting from waste management practices. In October 1992, Mosaic completed a Contamination Assessment Report that delineated the extent of contamination and risk to human health and the environment. As a result of the contamination assessment, Mosaic identified and sealed twelve former recharge well bore holes within the main cooling pond that were contributing to groundwater impacts.

69.     In 1998, Florida enacted § 403.4155, F.S., which requires FDEP to promulgate rules related to closure and financial responsibility for phosphogypsum stacks. Rules were duly promulgated in Chapter 62-673, F.A.C. As a result, Mosaic is required by FDEP to annually

estimate the cost for closing the phosphogypsum stack system (including water treatment and management costs) at the end of the useful life of the facility and the cost associated with long-term monitoring of the effectiveness of closure (post-closure care or long-term care). Based on the estimated cost for closure and long-term care, Mosaic is required to establish Financial Assurance to guarantee the funds are available to close the facility at the end of the useful life. To meet its Financial Assurance obligations under Chapter 62-673, F.A.C., Mosaic established a corporate guarantee with FDEP.

## NEW WALES FACILITY CLAIMS FOR RELIEF

### i.   *First Claim for Relief*

### *(Failure to Make Hazardous Waste Determinations)*

70.     The allegations in Paragraphs 1 through 69 are realleged and incorporated herein by reference.

71.     Pursuant to F.A.C. Rule 62-730.160(1) (40 C.F.R. § 262.11), Defendant, as a generator of solid waste, is required to make a hazardous waste determination.

72.     At the time of the December 9, 2003 CEI (and since July 2002), Defendant routinely generated wastewaters from regenerating demineralizer units for which hazardous waste determinations had not been made.

73.     At the time of the November 16-17, 2004 CEI and the December 13-15, 2004 SI, Defendant routinely generated the following solid wastes for which hazardous waste determinations had not been made:

      a.     Phosphoric Acid Plant scrubbers' effluent;

      b.     #2 DAP Plant scrubbers' effluent;

      c.     PMAP Plant scrubber effluent;

    d.     Spent sulfuric acid and wastewaters generated from cleaning phosphoric

acid production pipes and equipment;

    e.     Wastewaters generated from cleaning the Fertilizer Plants' production

pipes and equipment;

    f.     Spills and leaks from phosphoric acid and fertilizer production.

74.     Based on EPA's knowledge of the processes at the New Wales Facility, the December 9,

2003 and November 16-17, 2004 CEIs and the December 13-15, 2004 SI, EPA determined the

following solid wastes are D002 hazardous wastes:

    a.     Phosphoric Acid Plant scrubbers' effluent;

    b.     PMAP Plant scrubber effluent;

    c.     #2 DAP Plant scrubbers' effluent;

    d.     Spent sulfuric acid and wastewaters generated from cleaning phosphoric

acid production pipes and equipment;

    e.     Wastewater generated from cleaning the Fertilizer Plants' production

pipes and equipment;

    f.     Wastewater generated from regenerating demineralizer units at the

Sulfuric Acid Plants; and

    g.     Spills and leaks from phosphoric acid and fertilizer production.

75.     Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of

RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for each day that it failed to make a hazardous

waste determination for solid wastes generated at its New Wales Facility in violation of F.A.C.

Rule 62-730.160(1) (40 C.F.R. § 262.11).

### ii.   _Second Claim for Relief_

_(Treatment, Storage and Disposal of Hazardous Waste in the Phosphogypsum Stack System, an Earthen Ditch and an Unlined Surface Impoundment (Stormwater Retention Pond) without a Permit or Interim Status in Violation of § 403.722 F.S. (Section 3005 of RCRA, 42 U.S.C. § 6925), and the applicable regulatory requirements found at F.A.C. Rules 62-730.180 and 62-730.220 (40 C.F.R. Part 264, Subparts A-G, K and CC, and Part 270))._

76.     The allegations in Paragraphs 1 through 75 are realleged and incorporated herein by reference.

77.     Section 403.722, F.S. (RCRA Section 3005(a), 42 U.S.C. § 6925(a)), and F.A.C. Rule 62-730.180 (40 C.F.R. Parts 264, Subparts A-G, K and CC, and 270), require, among other things, that the owner and operator of a hazardous waste management unit must have a permit or interim status for the treatment, storage and/or disposal of any hazardous waste during the active life of the unit.

78.     Since at least November 16, 2004 and continuing to at least the date of the filing of this Complaint, Defendant has routinely treated, stored and disposed of the following D002 hazardous wastes in the New Wales Facility's phosphogypsum stack system:

      a.     Phosphoric Acid Plant scrubbers' effluent;

      b.     PMAP Plant scrubber effluent;

      c.     #2 DAP Plant scrubbers' effluent;

      d.     Spent sulfuric acid and wastewaters generated from cleaning phosphoric acid production pipes and equipment;

      e.     Wastewater generated from cleaning the Fertilizer Plants' production pipes and equipment; and

      f.     Spills and leaks from phosphoric acid, and fertilizer production.

79.     Since at least July 2002 and continuing to at least November 2004, Defendant routinely treated, stored and disposed of wastewater generated from regenerating demineralizer units associated with the Sulfuric Acid Plants, a D002 hazardous waste, in an earthen ditch and the Stormwater Retention Pond.

80.     Since at least July 2002 Defendant has operated its Facility's earthen ditch and Stormwater Retention Pond, as hazardous waste management units, i.e., surface impoundments, and is subject to the hazardous waste requirements at Chapter 62-730, F.A.C. (40 C.F.R. Part 264, Subparts A-G, K (Surface Impoundments), CC (Air Emission Standards for Tanks, Surface Impoundments and Containers)).

81.     Since at least November 2004, Defendant has operated its Facility's phosphogypsum stack system, as a hazardous waste management unit, i.e., surface impoundment, and is subject to the hazardous waste requirements at Chapter 62-730, F.A.C. (40 C.F.R. Part 264, Subparts A-G, K (Surface Impoundments), CC (Air Emission Standards for Tanks, Surface Impoundments and Containers)).

82.     Defendant has neither a RCRA hazardous waste permit nor interim status for treatment, storage or disposal of hazardous waste in its phosphogypsum stack system, earthen ditch, or Stormwater Retention Pond, and is therefore in violation of § 403.722, F.S. (Section 3005 of RCRA, 42 U.S.C. § 6925), and the applicable regulatory requirements found at F.A.C. Rules 62-730.180 and 62-730.220, (40 C.F.R. Part 264, Subparts A-G, K and CC, and Part 270).

83.     Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it treated, stored, and/or disposed of hazardous waste in its phosphogypsum stack system, earthen ditch, and Stormwater Retention Pond at its New Wales Facility without a permit or interim status.

### iii.    *Third Claim for Relief*

#### *(Failure to Perform Land Disposal Determinations)*

84.    The allegations in Paragraphs 1 through 83 are realleged and incorporated herein by reference.

85.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. § 268.7(a)(1)), Defendant is required, among other things, to determine if its hazardous waste needs to be treated before it can be land disposed.

86.    Since at least July 2002 and continuing to at least November 2004, Defendant routinely generated hazardous wastewaters from regenerating demineralizer units at the Sulfuric Acid Plants and failed to determine whether this waste must be treated before it can be land disposed.

87.    Since at least November 2003 and continuing to at least the date of filing of this Complaint, Defendant has routinely generated the following hazardous wastes and failed to determine if these wastes must be treated before they can be land disposed:

      a.    Phosphoric Acid Plant scrubbers' effluent;

      b.    PMAP Plant scrubber effluent;

      c.    #2 DAP Plant scrubbers' effluent;

      d.    Spent sulfuric acid and wastewaters generated from cleaning phosphoric acid production pipes and equipment;

      e.    Wastewaters generated from cleaning the Fertilizer Plants' production pipes and equipment; and

      f.    Spills and leaks from phosphoric acid and fertilizer production.

88.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to determine if these

hazardous wastes generated at its New Wales Facility must be treated before they can be land disposed. Each such failure is a violation of F.A.C. Rule 62-730.183 (40 C.F.R. § 268.7(a)(1)).

### iv.    *Fourth Claim for Relief*

### *(Failure to Meet Land Disposal Restrictions for Prohibited Hazardous Wastes)*

89.    The allegations in Paragraphs 1 through 88 are realleged and incorporated herein by reference.

90.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. § 268.9(c)), Defendant, among other things, is prohibited from land disposing a waste that exhibits a hazardous characteristic under F.A.C. Rule 62-730.030(1) (40 C.F.R. Part 261, Subpart C), unless the waste complies with the treatment standards under F.A.C. Rule 62-730.183 (40 C.F.R. Part 268, Subpart D).

91.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. Part 268, Subpart D). D002 wastewaters, must meet the DEACT treatment standard before the waste can be disposed.

92.    Pursuant to F.A.C. Rule 62-730.183 (Subpart D of 40 C.F.R. Part 268), the "Universal Treatment Standards" regulations, require, among other things, that prohibited wastewaters must contain no more than 1.4 milligrams per liter (mg/L) of arsenic; no more than 0.69 mg/L of cadmium; and no more than 2.77 mg/L of chromium to be land disposed.

93.    Based on the results of the November 16-17, 2004 CEI and the December 13-15 2004 SI, and EPA's knowledge of the composition of the Mosaic New Wales Facility's effluent, Mosaic was land disposing the following hazardous wastes  in the phosphogypsum stack system, which wastes did not meet the DEACT standard for D002 (corrosivity) or the Universal Treatment Standard of 1.4 milligrams per liter (mg/L) of arsenic; 0.69 mg/L cadmium; and 2.77 mg/L of chromium prior to land disposal:

a.      Phosphoric Acid Plants scrubbers' effluent;

b.      PMAP Plant scrubber effluent;

c.      #2 DAP Plant scrubbers' effluent;

d.      Spent sulfuric acid and wastewaters generated from cleaning phosphoric

acid production pipes and equipment;

e.      Wastewaters generated from cleaning the Fertilizer Plants' production

pipes and equipment; and

f.      Spills and leaks from phosphoric acid and fertilizer production.

94.     Since at least July 2002 and continuing to at least November 2004, Defendant disposed

of hazardous wastewaters from regenerating demineralizer units at the sulfuric acid plants into an

earthen ditch and the Stormwater Retention Pond, and did not meet the DEACT standard for

D002 prior to land disposal.

95.     Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of

RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for each day that it failed to meet the standards

set forth at F.A.C. Rule 62-730.183 (40 C.F.R. Part 268, Subpart D) prior to land disposing

prohibited waste in the phosphogypsum stack system, earthen ditch, and the Stormwater

Retention Pond at the New Wales Facility, in violation of F.A.C. Rule 62-730.183 (40 C.F.R.

§ 268.9(c), and Part 268, Subpart D).

*v.*   ***Fifth Claim for Relief***

***(Failure to Prepare an Adequate Cost Estimate for Closure)***

96.     The allegations in Paragraphs 1 through 95 are realleged and incorporated herein by

reference.

97.     Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), each owner or operator

is required to meet the requirements of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.142) (Cost

Estimate for Closure).

98.     Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.142(a)), each owner or operator

must have a detailed written estimate, in current dollars, of the cost of closing the facility in

accordance with the requirements in 40 C.F.R. §§ 264.111 through 264.115, and the other

applicable closure requirements listed in 40 C.F.R. § 264.142(a).

99.     Since at least the  December 9, 2003 and November 16-17, 2004 CEIs and the December

13-15, 2004 SI, and continuing through at least the date of the filing of this Complaint,

Defendant had not established an adequate cost estimate for closure of its New Wales Facility

phosphogypsum stack system in violation of the requirements of F.A.C. Rule 62-730.180(1) (40

C.F.R. §§ 264.111 through § 264.115), and the other applicable closure requirements listed in 40

C.F.R. § 264.142(a).

100.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of

RCRA, 42 U.S.C. § 6928(a), and the § 403.727, F.S. for each day that it failed to have an

adequate cost estimate for the closure of its New Wales Facility phosphogypsum stack system.

### *vi.     Sixth Claim for Relief*

### *(Failure to Establish Adequate Financial Assurance for Closure)*

101.    The allegations in Paragraphs 1 through 100 are realleged and incorporated herein by

reference.

102.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. §§ 264.140(a)), each owner or

operator of a treatment, storage and disposal facility must establish financial assurance for

closure of the facility (Financial Assurance for Closure).

103.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. §§ 264.143(a)), the owner or operator

must choose from the options set forth at 40 C.F.R. § 264.143(a) through (f) and F.A.C. Rule 62-

730.226(5) and (6).

104.    Since at least the December 9, 2003 and November 16-17, 2004 CEIs and the December

13-15, 2004 SI, and continuing through at least the date of the filing of this Complaint,

Defendant had not established adequate financial assurance for closure of its hazardous waste

units (phosphogypsum stack system, earthen ditch and Stormwater Retention Pond) at its New

Wales Facility in violation of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.143(a) through (f)).

105.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of

RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to establish adequate

financial assurance for closure of its New Wales Facility phosphogypsum stack system.

### vii.    *Seventh Claim for Relief*

### *(Failure to Prepare an Adequate Cost Estimate for Post-Closure Care)*

106.    The allegations in Paragraphs 1 through 105 and are realleged and incorporated herein by

reference.

107.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. 40 C.F.R. § 264.140(b)), each owner

or operator of disposal facilities, piles, surface impoundments, tank systems and containment

buildings must prepare a cost estimate for post closure of its facility to meet the requirements of

F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.144) (Cost Estimate for Post-Closure Care).

108.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.144(a)), the owner or operator of

a disposal surface impoundment required under 40 C.F.R. § 264.228 to prepare a contingent

closure and post-closure plan, must have a detailed written estimate, in current dollars, of the

annual cost of post-closure monitoring and maintenance of the facility in accordance with F.A.C. Rule 62-730.180(1) (40 C.F.R. §§ 264.117 through 264.120, and 40 C.F.R. § 264.228).

109.     Since at least the December 9, 2003 and November 16-17, 2004 CEIs and the December 13-15, 2004 SI, and continuing through at least the date of the filing of this Complaint, Defendant did not have an adequate detailed written estimate, in current dollars, of the annual cost for post-closure monitoring and maintenance of its New Wales Facility phosphogypsum stack system in accordance with the applicable post-closure regulations set forth at F.A.C. Rule 62-730.180(1) (40 C.F.R. §§ 264.117 through 264.120, and 40 C.F.R. § 264.228).

110.     Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and the § 403.727, F.S. for each day that it failed to prepare an adequate post-closure care cost estimate for its New Wales Facility phosphogypsum stack system.

### *viii.     Eighth Claim for Relief*

### *(Failure to Establish Adequate Financial Assurance for Post-Closure Care)*

111.     The allegations in Paragraphs 1 through 110 are realleged and incorporated herein by reference.

112.     Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(b)), each owner or operator of disposal facilities, piles, surface impoundments, tank systems and containment buildings are required to meet the requirements of F.A.C. Rule 62-730.180(1) (40 C.F.R. 264.145) and F.A.C. Rule 62-730.226 (Financial Assurance for Post-Closure Care).

113.     Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.145), the owner or operator of a hazardous waste unit subject to the requirements of 40 C.F.R. § 264.144 must establish financial assurance for post-closure care in accordance with the approved post-closure plan for its facility

60 days prior to the initial receipt of hazardous waste or the effective date of the regulation, whichever is later.

114. Since at least the December 9, 2003 and November 16-17, 2004 CEIs and the December 13-15, 2004 SI, and continuing through at least the date of the filing of this Complaint, Defendant was subject to the requirements of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.145) and had not established adequate financial assurance for post-closure care.

115. Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to establish adequate financial assurance for post-closure care of its New Wales Facility phosphogypsum stack system.

### ix. *Ninth Claim for Relief*

### *(Failure to Establish Adequate Financial Responsibility for Third Party Liability)*

116. The allegations in Paragraphs 1 through 115 are realleged and incorporated herein by reference.

117. Owners and operators of treatment, storage and disposal facilities are required by F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)) to meet the requirements of F.A.C. Rule 62-730.226 and 40 C.F.R. § 264.147(a) (Liability Requirements).

118. Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147(a)), the owner or operator of each treatment, storage and disposal facility must establish financial responsibility for bodily injury and property damage to third parties caused by sudden accidental occurrences arising from operations of the facility, and must choose from the options as specified in paragraphs (a) (1) through (6) of 40 C.F.R. § 264.147 and F.A.C. Rule 62-730.180(1).

119. Owners and operators of surface impoundments, landfills, land treatment facilities, or hazardous waste disposal miscellaneous units are required by F.A.C. Rule 62-730.180(1) (40

C.F.R. § 264.140(a)), to meet the requirements of F.A.C. Rule 62-730.226, and 40 C.F.R.

§ 264.147(b) (Liability Requirements).

120.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147(b)), owners or operators of

each surface impoundment, landfill, land treatment facility, or hazardous waste disposal

miscellaneous unit must establish financial responsibility for bodily injury and property damage

to third parties caused by non-sudden accidental occurrences arising from operations of the

facility, and must choose from the options as specified in paragraphs (b) (1) through (6) of 40

C.F.R. § 264.147 and F.A.C. Rule 62-730.180(1).

121.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147(b)), owners and operators

who are subject to 40 C.F.R. § 264.147(b) may combine coverage for sudden and non-sudden

accidental occurrences.

122.    Since at least the December 9, 2003 and November 16-17, 2004 CEIs and the December

13-15, 2004 SI, and continuing through at least the date of the filing of this Complaint,

Defendant had not established adequate financial responsibility for third party liability for

sudden or non-sudden accidental occurrences using any of the options specified in paragraphs

(a)(1) through (6) or (b)(1) through (6) of 40 C.F.R. § 264.147 as required by F.A.C. Rule 62-

730.180(1).

123.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of

RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to establish adequate

financial responsibility for third party liability at its New Wales Facility. Such failure is in

violation of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147).

## B.  GENERAL RIVERVIEW FACILITY ALLEGATIONS

**Facility Process Description**

124.    The Riverview Facility is a production facility for sulfuric acid, phosphoric acid, MAP,

DAP, fluorosilicic acid (FSA) and animal feed ingredients (AFI).

125.    The Riverview Facility has been in operation at the current approximate 866-acre site

since 1925. The Riverview Facility was originally owned by Gardiner Inc. Cargill Fertilizer, Inc.,

a predecessor in interest to Cargill Fertilizer, LLC, purchased the Facility from Gardiner, Inc. in

1985. On October 22, 2004, Cargill Fertilizer, LLC became Mosaic Fertilizer, LLC.

126.    The Riverview Facility manufactures sulfuric acid, phosphoric acid, MAP, DAP, FSA,

and AFI through mineral processing and chemical manufacturing methods described in

paragraphs 132-144 below.

127.    At the Riverview Facility, sulfuric acid is reacted with mineral phosphate rock to produce

phosphoric acid (mineral processing). Different concentrations of phosphoric acid are then

reacted with ammonia to produce MAP or DAP (chemical manufacturing).

128.    Fluoride vapors emitted during the phosphoric acid evaporation steps are captured,

condensed, and concentrated to produce FSA (chemical manufacturing).

129.    Phosphoric acid is defluorinated and reacted with limestone to produce AFI. The

production of non-ammoniated AFI is subject to the Bevill Exclusion.

130.    Operations at the Riverview Facility fall into several categories, only some of which are

mineral processing.

131.    On December 8, 2003, EPA conducted a CEI, on March 1, 2005, EPA conducted a CEI,

and on May 10-11, 2005, EPA conducted a SI at the Riverview Facility to determine the

Facility's compliance with state and federal RCRA requirements.

**Sulfuric Acid Production**

132.    The manufacturing of phosphoric acid, FSA, MAP, DAP, and AFI at the Riverview Facility begins with the production of sulfuric acid. The Riverview Facility produces sulfuric acid in three (3) Sulfuric Acid Plants on-site. The sulfuric acid is stored in large tanks until piped to the Phosphoric Acid Plant's two reactors for use in digesting the phosphate rock to produce phosphoric acid.

133.    Sulfuric acid is also used to clean production and storage equipment, mainly evaporators and pipes.

134.    Sulfuric acid production is not a mineral processing activity and is not subject to the Bevill Exclusion.

**Phosphoric Acid Production**

135.    Phosphate rock is received from the Defendant's mines by truck or rail car.

136.    Sulfuric acid is piped from the storage tanks in the Sulfuric Acid Plants to two phosphoric acid reactors within a single Phosphoric Acid Plant (designated as the Prayon Reactor and the Dorrco Reactor). In the reactors, the sulfuric acid is mixed with phosphate rock to produce weak phosphoric acid [approximately 30% phosphorus pentoxide ($P_2O_5$) (hereafter referred to as weak phosphoric acid)]. A by-product of the reaction is calcium sulfate dihydrate, typically referred to as phosphogypsum. Phosphogypsum is separated from the weak phosphoric acid by filtration. To recover additional weak phosphoric acid, the filtered phosphogypsum is rinsed with process wastewater pumped from the HDPE-lined ponds and ditches circling the phosphogypsum stack. After rinsing with process wastewater, minimal additional phosphoric acid is recoverable from the phosphogypsum, so the rinsed phosphogypsum is mixed with water (slurried) and pumped to the 480 acre HDPE-lined phosphogypsum stack for disposal.

137.    To meet material specifications for phosphate fertilizer production, the Riverview Facility concentrates the 30% phosphoric acid in two stages. The first concentration step is achieved through evaporation, resulting in 43% phosphoric acid. The 43% phosphoric acid is ultimately concentrated to 54% phosphoric acid through a second evaporation step. A blend of the 30% phosphoric acid and the 54% phosphoric acid is used in the MAP and DAP production processes described in paragraphs 141-144 below.

138.    Phosphoric acid production processes leading to the manufacture of MGA are mineral processing.

139.    The diversion of phosphoric acid from MGA production for use in chemical manufacturing (FSA, MAP, DAP) is not mineral processing.

140.    Contaminants are accumulated in the water used throughout production of phosphoric acid up to MGA, resulting in aqueous wastes referred to as "process wastewater." Prior to reuse in the various processes, the process wastewater must be cooled and excess contaminants must be removed. A majority of the excess contaminants precipitate (settle) from the wastewater as it cools in the phosphogypsum stack system. Approximately 60,000 gallons per minute (gpm) of process wastewater is sent from the phosphoric acid production plant to the phosphogypsum stack system for cooling and contaminant settling.

**Fertilizer Production**

141.    MAP and DAP fertilizer products are manufactured at the facility in two (2) Plants designated as #5 DAP and #6 DAP/MAP (collectively, Fertilizer Plants).

142.    DAP production consists of reacting a mixture of 30% phosphoric acid and 54% phosphoric acid with anhydrous ammonia in a reactor ("pre-neutralizer"). The resultant slurry is removed from the pre-neutralizer and pumped into a rotating drum granulator, where the product

30

forms into round, solid, pebble-like granules. This solid material then passes through a dryer followed by a system of sizing screens and mills to achieve the desired granule size. The product is then cooled and stored. It is shipped offsite as bulk granular fertilizer for blending and use on farm crops.

143.    During the production of phosphoric acid up to MGA, an impure phosphoric acid with high solids is generated. This high solids phosphoric acid is reacted with ammonia in a spray tower to produce MAP. The resultant product is dried and ground.

144.    The Fertilizer Plants' production operations are chemical manufacturing, not mineral processing and as such are not subject to the Bevill Exclusion.

**Air Pollution Control Device (Phosphoric Acid and Fertilizer Production)**

145.    Air particulates emitted from the phosphoric acid production process are captured ("scrubbed") from the reactors, filters, and other production equipment (e.g. clarifiers and storage tanks) using air pollution control devices commonly referred to as scrubbers. The scrubbing liquid for scrubbers at the Riverview Facility is process wastewater that is pumped from the phosphogypsum stack system through the scrubbers to collect particulate air emissions in a single pass through the scrubbers before being discharged directly back into the phosphogypsum stack system.

146.    Most of the ammonia and fugitive air particulates emitted from the pre-neutralizer, granulator, dryer, etc., during MAP and DAP production are captured in a series of scrubbers similar to the phosphoric acid scrubbers described above. Mosaic uses process wastewater from the phosphogypsum stack system in the last stage of air scrubbing (tail gas scrubbers) in the Fertilizer Plants to collect these particulate air emissions. At the Riverview Facility, process wastewater is pumped from the cooling pond system to a combined header that splits the process

wastewater and sends part of it to the tail gas scrubber in the #5 DAP Plant and the other half to

the tail gas scrubber in the #6 DAP/MAP Plant. The effluent from the tail gas scrubbers

combines to a single flow that is returned to the phosphogypsum stack system cooling pond

system.

147.   The operation of scrubbers is not part of mineral processing, and the wastewater from

these scrubbers are not subject to the Bevill Exclusion.

**FSA Production**

148.   The Riverview Facility produces FSA depending on market conditions.

149.   FSA is produced from the vapors emitted during the first and second stage evaporation of

phosphoric acid. In the first stage, each evaporator is equipped with a FSA recovery unit, also

called a "Swift Tower." The gas is condensed in the Swift Tower and continuously strengthened

until the desired strength of FSA is obtained, typically a 24 to 25% solution, at which time it is

transferred to a receiving tank.

150.   FSA solutions meeting customer specifications in the receiving tank are transferred to

storage tanks and sold to customers off-site.

151.   At the time of the December 8, 2003 and March 1, 2005 CEIs, and the May 10-11, 2005

SI, Défendant discharged FSA solutions not meeting customer specifications to the process

wastewater system.

152.   FSA production is not a mineral processing activity and as such is not subject to the

Bevill Exclusion.

**Pipe and Tank Cleaning**

153.   Mosaic cleans its pipes, tanks, evaporators, and other process equipment throughout the

phosphoric acid and fertilizer production areas on a regular basis, using process wastewater,

phosphogypsum stack system wastewater, or a mixture of either with sulfuric acid as the cleaning agent. After use, the spent corrosive hazardous cleaning agent is discharged to the phosphogypsum stack system. Cleaning wastes are generated on a daily basis during normal plant operations and during scheduled maintenance periods.

154.    Pipe and tank cleaning operations are not part of mineral processing and the wastes generated from such cleaning operations are not subject to the Bevill Exclusion.

**Phosphogypsum Stack System**

155.    Mosaic disposes of slurried phosphogypsum in a 370-acre clay-lined phosphogypsum stack. A 110 acre expansion to the 370-acre phosphogypsum stack is lined with 60-mil HDPE. The phosphogypsum stack and the expansion are located northeast of the facility, across US Hwy 41.

156.    The 480-acre combined lined phosphogypsum stack operates in conjunction with a 160-acre process wastewater system that is lined with 80-mil HDPE. The process wastewater system consists of a 32-acre transfer pond located directly east of the production complex, and the pond's connecting ditches. Mosaic operates the pond system under Industrial Wastewater Facility Permit Number FL0000761 issued by FDEP.

157.    Mosaic's entire Riverview Facility is encompassed by a comprehensive groundwater monitoring system that is monitored and operated in accordance with an approved groundwater monitoring plan under Industrial Wastewater Facility Permit Numbers FL0000761 and FL0177130 issued by FDEP.

158.    In 1998, Florida enacted § 403.4155, F.S., which required FDEP to promulgate rules related to closure and financial responsibility for phosphogypsum stacks. Rules were duly promulgated in Chapter 62-673, F.A.C. As a result, Mosaic is required annually to estimate the

cost for closing the phosphogypsum stack system (including water treatment and management costs) at the end of the useful life of the facility and the cost associated with long-term monitoring of the effectiveness of closure (post-closure care or long-term care). Based on the estimated cost for closure and long-term care, Mosaic is required to establish Financial Assurance to guarantee the funds are available to close the facility at the end of the useful life. To meet its Financial Assurance obligations under Chapter 62-673, F.A.C., Mosaic established a corporate guarantee with FDEP.

## Spills & Leaks of Sulfuric Acid, Phosphoric Acid and FSA

159.   In Mosaic's phosphoric acid and fertilizer production areas, spills and leaks of sulfuric acid, phosphoric acid and FSA occur.  These spills and leaks are commingled with process wastewater being transported from the production areas to the phosphogypsum stack system.

160.   Spills and leaks of sulfuric acid, phosphoric acid and FSA are not part of mineral processing and are therefore not subject to the Bevill Exclusion.

## THE RIVERVIEW FACILITY CLAIMS FOR RELIEF

### *x.* *Tenth Claim for Relief*

### *(Failure to Make Hazardous Waste Determinations)*

161.   The allegations in Paragraphs 1 through 36 and 124 through 160 are realleged and incorporated herein by reference.

162.   Pursuant to F.A.C. Rule 62-730.160(1) (40 C.F.R. § 262.11), Defendant, as a generator of solid waste, is required to make a hazardous waste determination.

163.   At the time of the December 8, 2003 and March 1, 2005 CEIs, and the May 10-11, 2005 SI, Defendant routinely generated the following solid wastes for which hazardous waste determinations had not been made:

    a.    Phosphoric Acid Plant scrubbers' effluent;

    b.    #5 DAP Plant reactor/granulator/cooler equipment scrubber effluent;

    c.    # 5 DAP Plant dryer unit scrubber effluent;

    d.    #6 DAP Plant dryer unit scrubber effluent;

    e.    #6 DAP Plant cooler unit scrubber effluent;

    f.    Spent sulfuric acid and wastewaters generated from the cleaning of

phosphoric acid production pipes and equipment;

    g.    Wastewaters generated from cleaning the Fertilizer Plants' and FSA

production pipes and equipment;

    h.    Spills and leaks from phosphoric acid and fertilizer production; and

    i.    FSA not meeting customer specifications (wastewater).

164.    Based on EPA's knowledge of the processes at the Riverview Facility and the December

8, 2003 and March 1, 2005 CEIs and May 10-11, 2005 SI, EPA determined the following solid

wastes are D002 hazardous wastes:

    a.    Phosphoric Acid Plant scrubbers' effluent;

    b.    #5 DAP Plant reactor/granulator/cooler equipment scrubber effluent;

    c.    #5 DAP Plant dryer unit scrubber effluent;

    d.    #6 DAP Plant dryer unit scrubber effluent;

    e.    #6 DAP Plant cooler unit scrubber effluent;

    f.    Spent sulfuric acid and wastewaters generated from the cleaning of

phosphoric acid production pipes and equipment;

    g.    Wastewaters generated from cleaning the Fertilizer Plants' and FSA

production pipes and equipment;

h.      Spills and leaks from phosphoric acid and fertilizer production; and

i.      FSA not meeting customer specifications (wastewater).

165.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of

RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for each day it failed to make a hazardous

waste determination for solid wastes generated at its Riverview Facility as required by F.A.C.

Rule 62-730.160(1) (40 C.F.R. § 262.11).

### xi.      *Eleventh Claim for Relief*

***(Treatment, Storage and Disposal of Hazardous Waste in the Phosphogypsum Stack System
Without a Permit or Interim Status in Violation of § 403.722 F.S. ((Section 3005 of RCRA, 42
U.S.C. § 6925) and the applicable regulatory requirements found at F.A.C. Rules 62-730.180
and 62-730.220 (40 C.F.R. Part 264, Subparts A-G, K and CC, and Part 270)).***

166.    The allegations in Paragraphs 1 through 36 and 124 through 165 are realleged and

incorporated herein by reference.

167.    Section 403.722 F.S. (RCRA Section 3005(a), 42 U.S.C. § 6925(a)), and F.A.C. Rule

62-730.180 (40 C.F.R. Parts 264, Subparts A-G, K and CC, and 270), require, among other

things, that the owner and operator of a hazardous waste management unit must have a permit or

interim status for the treatment, storage and/or disposal of any hazardous waste during the active

life of the unit.

168.    Since at least March 2005 and continuing to at least the filing date of this Complaint,

Defendant routinely treated, stored and disposed of the following D002 hazardous wastes in the

Riverview Facility's phosphogypsum stack system:

a.      Phosphoric Acid Plant scrubbers' effluent;

b.       #5 DAP Plant reactor/granulator/cooler equipment scrubber effluent;

c.      #5 DAP Plant dryer unit scrubber effluent;

d.    #6 DAP Plant dryer unit scrubber effluent;

e.    #6 DAP Plant cooler unit scrubber effluent;

f.    Spent sulfuric acid and wastewaters generated from the cleaning of phosphoric acid production pipes and equipment;

g.    Wastewaters generated from cleaning the Fertilizer Plants' and FSA production pipes and equipment;

h.    Spills and leaks from phosphoric acid and fertilizer production; and

i.    FSA not meeting customer specifications (wastewater).

169.   Defendant has neither a RCRA hazardous waste permit nor interim status for treatment, storage or disposal of hazardous waste in its phosphogypsum stack system in violation of § 403.722, F.S. (Section 3005 of RCRA, 42 U.S.C. § 6925) and the applicable regulatory requirements of F.A.C. Rules 62-730.180 and 62.730.220 (40 C.F.R. Parts 264, Subparts A-G, K and CC, and 270).

170.   Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it treated, stored, and/or disposed of hazardous waste in its phosphogypsum stack system at its Riverview Facility without a permit or interim status.

### xii.    *Twelfth Claim for Relief*

### *(Failure to Perform Land Disposal Determinations)*

171.   The allegations in Paragraphs 1 through 36 and 124 through 170 are realleged and incorporated herein by reference.

172.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. § 268.7(a)(1)), Defendant is required, among other things, to determine if its hazardous waste needs to be treated before it can be land disposed.

173.    Since at least March 2005 and continuing to at least the date of filing of this Complaint, Defendant routinely generated the following D002 hazardous wastes and failed to determine whether these wastes must be treated before they can be land disposed:

       a.    Phosphoric Acid Plant scrubbers' effluent;

       b.    Spent sulfuric acid and wastewaters generated from the cleaning of phosphoric acid production pipes and equipment;

       c.    Wastewaters generated from cleaning the Fertilizer Plants' and FSA production pipes and equipment;

       d.    Spills and leaks from phosphoric acid and fertilizer production; and

       e.    FSA not meeting customer specifications (wastewater).

174.    Since at least March 2005 and  continuing to at least April 2014, Defendant routinely generated the following D002 hazardous wastes and failed to determine whether these wastes must be treated before they can be land disposed:

       a.    #5 DAP Plant reactor/granulator/cooler equipment scrubber effluent; and

       b.    #5 DAP Plant dryer unit scrubber effluent.

175.    Since at least 2005 and continuing to at least April 2013, Defendant routinely generated the following D002 hazardous wastes and failed to determine whether these wastes must  be treated before they can be land disposed:

       a.    #6 DAP Plant dryer unit scrubber effluent; and

       b.    #6 DAP Plant cooler unit scrubber effluent.

176.   Defendant has violated F.A.C. Rule 62-730.183 (40 C.F.R. § 268.7(a)(1) for failure to make hazardous waste determinations before land disposal.

177.   Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.72, F.S. for each day that it failed to determine whether these hazardous wastes generated at its Riverview Facility must be treated before they can be land disposed.

### *xiii.* *Thirteenth Claim for Relief*

### *(Failure to Meet Land Disposal Restrictions for Prohibited Hazardous Wastes)*

178.   The allegations in Paragraphs 1 through 36 and 124 through 177 are realleged and incorporated herein by reference.

179.   Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. § 268.9(c)), Defendant, among other things, is prohibited from land disposing a waste that exhibits a characteristic under F.A.C. Rule 62-730.030(1) (40 C.F.R. Part 261, Subpart C) unless the waste complies with the treatment standards under F.A.C. Rule 62-730.183 (40 C.F.R. Part 268, Subpart D).

180.   Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. Part 268, Subpart D), D002 corrosive wastewaters, must meet the DEACT code before the waste can be land disposed.

181.   Since at least March 2005 and continuing to at least the date of the filing of this Complaint, Mosaic was land disposing the following hazardous wastes in the phosphogypsum stack system, which wastes did not meet the DEACT treatment standard prior to land disposal:

     a.     Phosphoric Acid Plant scrubbers' effluent;

     b.     Wastewaters generated from the cleaning of phosphoric acid production pipes and equipment;

39

    c.     Wastewaters generated from the cleaning of the MAP and DAP Plants' and FSA production equipment;

    d.     Spills and leaks from phosphoric acid and fertilizer production; and

    e.     FSA not meeting customer specifications (wastewater).

182.    Since at least March 2005 and continuing until at least April 2014, Mosaic was land disposing the following hazardous wastes n the phosphogypsum stack system, which wastes did not meet the DEACT treatment standard prior to land disposal:

    a.     #5 DAP Plant reactor/granulator/cooler/equipment scrubber effluent; and

    b.     #5 DAP Plant dryer unit scrubber effluent.

183.    Since at least March 2005 and continuing April 2013, Mosaic was land disposing the following hazardous wastes in the phosphogypsum stack system, which wastes did not meet the DEACT treatment standard prior to land disposal:

    a.     #6 DAP Plant dryer unit scrubber effluent; and

    b.     #6 DAP Plant cooler unit scrubber effluent.

184.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for failure to meet the standards set forth at F.A.C. Rule 62-730.183 (40 C.F.R. § 268.40(a) prior to land disposing prohibited waste in its phosphogypsum stack system at the Riverview Facility, in violation of F.A.C. Rule 62-730.183 (40 C.F.R. §§ 268.9(c) and 268.40(a)).

### *xiv.* *Fourteenth Claim for Relief*

### *(Failure to Prepare an Adequate Cost Estimate for Closure)*

185.    The allegations in Paragraphs 1 through 36 and 124 through 184 are realleged and incorporated herein by reference.

186.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), each owner or operator is required to meet the requirements of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.142) (Cost Estimate for Closure).

187.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.142(a)), each owner or operator must have a detailed written estimate, in current dollars, of the cost of closing the facility in accordance with the requirements in 40 C.F.R. §§ 264.111 through 264.115 and the other applicable closure requirements listed in 40 C.F.R. § 264.142(a).

188.    Since at least the December 8, 2003 CEI, March 1, 2005 CEI, and May 10-11, 2005 SI, and continuing through at least the date of the filing of this Complaint, the Defendant had not prepared an adequate cost estimate for closure of its hazardous waste units (phosphogypsum stack system) at its Riverview Facility in violation of the requirements 40 C.F.R. §§ 264.111 through 264.115, and the other applicable closure requirements listed in F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.142(a)).

189.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and the § 403.727, F.S. for each day that it failed to prepare an adequate cost estimate for the closure of its Riverview Facility phosphogypsum stack system.

### *xv.    Fifteenth Claim for Relief*

### *(Failure to Establish Adequate Financial Assurance for Closure)*

190.    The allegations in Paragraphs 1 through 36 and 124 through 189 are realleged and incorporated herein by reference.

191.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), each owner or operator of a treatment, storage and disposal facility must establish financial assurance for closure of the facility (Financial Assurance for Closure).

41

192.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.143(a)), the owner or operator

must choose from the options set forth at 40 C.F.R. § 264.143(a) through (f).

193.    Since at least the December 8, 2003 CEI, March 1, 2005 CEI, and May 10-11, 2005 SI,

and continuing through the date of the filing of this Complaint, Defendant had not established

adequate financial assurance for closure of its phosphogypsum stack system at the Riverview

Facility in violation of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.143(a) through (f)).

194.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of

RCRA, 42 U.S.C. § 6928(a), and the § 403.727, F.S. for each day that it failed to establish

adequate financial assurance for closure of its Riverview Facility phosphogypsum stack system.

### xvi.   *Sixteenth Claim for Relief*

#### *(Failure to Prepare an Adequate Cost Estimate for Post-Closure Care)*

195.    The allegations in Paragraphs 1 through 36 and 124 through 194 are realleged and

incorporated herein by reference.

196.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. 40 C.F.R. § 264.140(b)), each owner

or operator of disposal facilities, piles, surface impoundments, tank systems and containment

buildings must prepare a cost estimate for post-closure care of its facility to meet the

requirements of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.144) (Cost Estimate for Post-

Closure Care).

197.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.144(a)), the owner or operator of

a disposal surface impoundment required under 40 C.F.R. § 264.228 to prepare a contingent

closure and post-closure plan, must have a detailed written estimate, in current dollars, of the

annual cost of post-closure monitoring and maintenance of the facility in accordance with

40 C.F.R. §§ 264.117 through 264.120, and 40 C.F.R. § 264.228.

198.    Since at least the December 8, 2003 CEI, March 1, 2005 CEI, and May 10-11, 2005 SI, and continuing through at least the date of the filing of this Complaint, Defendant did not have an adequate detailed written estimate, in current dollars, of the annual cost for post-closure monitoring and maintenance of its Riverview Facility phosphogypsum stack system in accordance with the applicable post-closure regulations set forth at 40 C.F.R. §§ 264.117 through 264.120, and 40 C.F.R. § 264.228.

199.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to prepare an adequate post-closure care cost estimate for its Riverview Facility phosphogypsum stack system.

*xvii.*    ***Seventeenth Claim for Relief***

***(Failure to Establish Adequate Financial Assurance for Post-Closure Care)***

200.    The allegations in Paragraphs 1 through 36 and 124 through 199 are realleged and incorporated herein by reference.

201.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(b)) each owner or operator of disposal facilities, piles, surface impoundments, tank systems and containment buildings are required to meet the requirements of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.145) and F.A.C. Rule 62-730.226 (Financial Assurance for Post-Closure Care).

202.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.145), the owner or operator of a hazardous waste unit subject to the requirements of 40 C.F.R. § 264.144 must establish financial assurance for post-closure care in accordance with the approved post-closure plan for its facility 60 days prior to the initial receipt of hazardous waste or the effective date of the regulation, whichever is later.

203.    Since at least the December 8, 2003 CEI, March 1, 2005 CEI, and May 10-11, 2005 SI, and continuing through the date of the filing of this Complaint, Defendant was subject to the requirements of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.145(a)) and had not established adequate financial assurance for post-closure care.

204.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to establish adequate financial assurance for post-closure for its Riverview Facility phosphogypsum stack system.

### xviii.    Eighteenth Claim for Relief

### (Failure to Establish Adequate Financial Assurance for Third Party Liability)

205.    The allegations in Paragraphs 1 through 36 and 124 through 204 are realleged and incorporated herein by reference.

206.    Owners and operators of treatment, storage and disposal facilities are required by F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), to meet the requirements of 40 C.F.R. § 264.147(a) and F.A.C. Rule 62-730.226, F.A.C. (Liability Requirements).

207.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147(a)), the owner or operator of each treatment, storage and disposal facility must establish financial responsibility for bodily injury and property damage to third parties caused by sudden accidental occurrences arising from operations of the facility, and must choose from the options as specified in paragraphs (a) (1) through (6) of 40 C.F.R. § 264.147.

208.    Owners and operators of surface impoundments, landfills, land treatment facilities, or hazardous waste disposal miscellaneous units are required by F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), to meet the requirements of 40 C.F.R. § 264.147(b) and F.A.C. Rule 62-730.226 (Liability Requirements).

44

209.    F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147(b)) requires that the owner or operator of each surface impoundment, landfill, land treatment facility, or hazardous waste disposal miscellaneous unit establish financial responsibility for bodily injury and property damage to third parties caused by non-sudden accidental occurrences arising from operations of the facility, and must choose from the options as specified in paragraphs (b)(1) through (6) of 40 C.F.R. § 264.147.

210.    Pursuant to F.A.C. Rule 62-730.180(1) (C.F.R. § 264.147(b)), owners and operators who are subject to 40 C.F.R. § 264.147(b) may combine coverage for sudden and non-sudden accidental occurrences.

211.    Since at least the December 8, 2003 CEI, March 1, 2005 CEI, and May 10-11, 2005 SI, and continuing through the date of the filing of this Complaint, Defendant had not established adequate financial responsibility for third party liability for sudden or non-sudden accidental occurrences using any of the options specified in paragraphs (a)(1) through (6) or (b)(1) through (6) of 40 C.F.R. § 264.147.

212.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to establish adequate financial responsibility for third party liability at its Riverview Facility. Such failure is in violation of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147).

## C.  GENERAL BARTOW FACILITY ALLEGATIONS

**Facility Process Description**

213.    The Bartow Facility is a production facility for sulfuric acid, phosphoric acid, FSA, MAP and DAP.

214.    The Bartow Facility operates a Reverse Osmosis (RO) Unit for the treatment of process

wastewater to produce clean, discharge-quality water.

215.    The Bartow Facility began operations in 1929 at the current approximate 8,500 acre site

as a phosphate rock storage, drying, and shipping facility associated with an adjacent phosphate

mine. Cargill Fertilizer, Inc., a predecessor in interest to Cargill Fertilizer, LLC, purchased the

Facility from Seminole Fertilizer Corporation in 1993. On October 22, 2004, concurrent with the

merger of the Cargill fertilizer business with IMC Global, the name of Cargill Fertilizer, LLC

was changed to Mosaic Fertilizer, LLC. Mosaic Fertilizer, LLC is the 100% owner of the Bartow

Facility.

216.    At the Bartow Facility, sulfuric acid is reacted with mineral phosphate rock to produce

phosphoric acid (mineral processing). Different concentrations of phosphoric acid are then

reacted with ammonia to produce MAP or DAP (chemical manufacturing).

217.    Fluoride vapors emitted during the phosphoric acid evaporation steps are captured,

condensed, and concentrated to produce FSA (chemical manufacturing).

218.    Some process wastewater is treated at the Bartow Facility through the use of an RO

system. Any unclean discharge (reject), if hazardous, from the RO system is not a mineral

processing waste and is not subject to the Bevill Exclusion.

219.    Operations at the Bartow Facility fall into several categories, only some of which are

mineral processing.

220.    On March 7-10, 2006, EPA conducted a CEI and SI at the Bartow Facility to determine

the facility's compliance with state and federal RCRA requirements.

**Sulfuric Acid Production**

221.    The manufacturing of phosphoric acid, FSA, MAP, and DAP at the Bartow Facility

begins with the production of sulfuric acid. The Bartow Facility produces sulfuric acid in three

(3) Sulfuric Acid Plants on-site. The sulfuric acid is stored in large tanks until piped to the

Phosphoric Acid Plant's two reactors for use in digesting the phosphate rock to produce

phosphoric acid.

222.    Sulfuric acid is also used to clean production and storage equipment, mainly evaporators

and pipes.

223.    Sulfuric acid production is not a mineral processing activity and is not subject to the

Bevill Exclusion.

**Phosphoric Acid Production**

224.    Phosphate rock is received from the Defendant's mines by truck or rail car.

225.    Sulfuric acid is piped from the storage tanks in the Sulfuric Acid Plants to two

phosphoric acid reactors within a single Phosphoric Acid Plant (designated as the Prayon

Reactor V and the Prayon Reactor U). In the reactors, the sulfuric acid is mixed with phosphate

rock to produce weak phosphoric acid [approximately 30% phosphorus pentoxide ($P_2O_5$)

(hereafter referred to as weak phosphoric acid)]. A by-product of the reaction is calcium sulfate

dihydrate which is typically referred to as phosphogypsum. Phosphogypsum is separated from

the weak phosphoric acid by filtration. To recover additional weak phosphoric acid, the filtered

phosphogypsum is rinsed with process wastewater that is pumped from the ponds and ditches

circling the phosphogypsum stack. After rinsing with process wastewater, the rinsed

phosphogypsum is mixed with process wastewater (slurried) and pumped to the 420-acre 60 mil HDPE lined phosphogypsum stack for disposal.

226.     To meet material specifications for phosphate fertilizer production, Bartow concentrates the 30% phosphoric acid in two stages. The first concentration step is achieved through evaporation, resulting in 40% phosphoric acid. The 40% phosphoric acid is ultimately concentrated to 54% phosphoric acid through a second evaporation step. A blend of the 30% phosphoric acid and the 54% phosphoric acid is used in the MAP and DAP production processes.

227.     Phosphoric acid production processes leading up to the manufacture of MGA are mineral processing.

228.     The diversion of phosphoric acid from MGA production for use in chemical manufacturing (FSA, MAP, DAP) is not mineral processing.

229.     Contaminants are accumulated in the water used throughout production of up to MGA, resulting in aqueous wastes referred to as "process wastewater." Prior to reuse in the various processes, the process wastewater must be cooled and excess contaminants must be removed. A majority of the excess contaminants precipitate from the water as it cools in the phosphogypsum stack system. Approximately 50,000-60,000 gpm of process wastewater is sent from the phosphoric acid production plant to the phosphogypsum stack system for cooling and contaminant settling.

**Fertilizer Production**

230.     MAP and DAP fertilizer products are manufactured at the Bartow Facility in two (2) Plants designated as MAP/DAP #3 and MAP/DAP #4 (collectively referred to as the Fertilizer Plants).

48

231.    DAP production consists of reacting a mixture of 30% phosphoric acid and 54% phosphoric acid with anhydrous ammonia in a pre-neutralizer. The resultant slurry is removed from the pre-neutralizer and pumped into a rotating drum granulator, where the product forms into round, solid, pebble-like granules. This solid material then passes through a dryer followed by a system of sizing screens and mills to achieve the desired granule size. The product is then cooled and stored. It is shipped off-site as bulk granular fertilizer for blending and use on farm crops.

232.    During the production of phosphoric acid up to MGA, an impure phosphoric acid with high solids is generated. This high solids phosphoric acid is reacted with ammonia in a spray tower to produced MAP. The resultant product is dried and ground.

233.    Mosaic's Fertilizer Plants' production operations are chemical manufacturing, not mineral processing and as such are not subject to the Bevill Exclusion.

**Air Pollution Control Devices (Phosphoric Acid and Fertilizer Production)**

234.    Air particulates emitted from the phosphoric acid production process are captured ("scrubbed") from the reactors, filters, and other production equipment (e.g. clarifiers and storage tanks) using scrubbers. The scrubbing liquid for scrubbers at the Bartow Facility is process wastewater that is pumped from the phosphogypsum stack system through the scrubbers to collect particulate air emissions in a single pass through the scrubber before being discharged back into the phosphogypsum stack system.

235.    Most of the ammonia and fugitive air particulates emitted from the pre-neutralizer, granulator, cooler, dryer, etc., during MAP and DAP production are captured in a series of scrubbers similar to the phosphoric acid scrubbers described above. The Bartow Facility uses water from a separate pond dedicated to MAP/DAP production (pH greater than 2) to scrub air

particulates from all of the Fertilizer Plants' scrubbers except for the MAP/DAP #3 Cooler Scrubber. The MAP/DAP #3 Cooler Scrubber uses once-through process wastewater from the phosphogypsum stack system to collect these particulate air emissions. At the Bartow Facility, the process wastewater effluent from all of the scrubbers except for the MAP/DAP #3 Cooler Scrubber is pumped back to a common sump and then from the sump to the dedicated DAP Pond. Process wastewater effluent from the MAP/DAP #3 Cooler Scrubber is returned to the phosphogypsum stack system cooling pond system.

236.    The operation of scrubbers is not part of mineral processing, and the wastewater from these scrubbers are not subject to the Bevill Exclusion.

**FSA Production**

237.    The Bartow Facility produces FSA depending on market conditions.

238.    FSA is produced from the vapors emitted during the first and second stage evaporation of phosphoric acid. In the first stage, each evaporator is equipped with a FSA recovery unit, also called a "Swift Tower." The gas is condensed in the Swift Tower and continuously strengthened until the desired strength of FSA is obtained, typically a 24% to 25% solution.

239.    Solutions meeting customer specifications in the receiving tank are transferred to storage tanks and sold to customers off-site.

240.    At the time of the March 7-10, 2006, CEI and SI, and continuing through the date of the filing of this Complaint, Mosaic discharged FSA solutions not meeting customer specifications to the process wastewater system.

241.    FSA production is not a mineral processing activity and as such FSA solutions not meeting customer specifications are not subject to the Bevill Exclusion.

**Pipe and Tank Cleaning**

242.    Mosaic cleans its pipes, tanks, evaporators, and other process equipment throughout the

phosphoric acid and fertilizer production areas on a regular basis, using process wastewater,

phosphogypsum stack system wastewater, or a mixture of either of these with sulfuric acid, as

the cleaning agent. After use, the spent corrosive hazardous cleaning agent is discharged to the

phosphogypsum stack system. Cleaning wastes are generated on a daily basis during normal

plant operations and during scheduled maintenance periods.

243.    Pipe and tank cleaning operations are not part of mineral processing and the wastewater

from such cleaning operations are not subject to the Bevill Exclusion.

**Reverse Osmosis System for Water Treatment**

244.    In order to meet its NPDES permit limitations when discharging water, the Bartow

Facility operates a RO system to treat its process wastewater prior to discharge. The RO system

has five trains and is capable of processing 1.4 million gallons of process wastewater per day.

The process wastewater is pumped into the RO system from the phosphogypsum stack system

for treatment. Treatment produces clean water ("permeate") and a more concentrated unclean

water (reject).

245.    The permeate may be discharged to local water bodies under FDEP NPDES Permit

Number FL0001589.

246.    The reject that exits the RO system is discharged back into the phosphogypsum stack

system.

247.    RO system operation is not part of mineral processing. The reject and any cleaning waste

generated at the RO system are not subject to the Bevill Exclusion.

**Spills & Leaks of Phosphoric Acid, FSA and Sulfuric Acid**

248.    In Mosaic's phosphoric acid and fertilizer production areas, spills and leaks of FSA,

phosphoric acid and sulfuric acid occur.  These spills and leaks commingle with process

wastewater being transported from the production areas to the phosphogypsum stack system.

249.    Spills and leaks of FSA, phosphoric acid and sulfuric acid are not part of mineral

processing and are therefore not subject to the Bevill Exclusion.

**Phosphogypsum Stack System**

250.    The Bartow Facility currently disposes of slurried phosphogypsum in the south

phosphogypsum stack expansion, a 575-acre, 60 mil HDPE- lined phosphogypsum stack located

southeast of the facility, across US Hwy 60. When originally constructed, the base of the south

phosphogypsum stack did not have a liner; however, beginning in 2000, the south

phosphogypsum stack was expanded vertically and a liner was placed on top of the

phosphogypsum stack as the Bartow Facility expanded the phosphogypsum stack in three

phases.  The combined expansion phases are referred to as the south phosphogypsum stack

expansion. Phosphogypsum is now deposited on top of the liners. The combined lined

phosphogypsum stack operates in conjunction with a 75-acre process wastewater system, and

together are referred to as the south phosphogypsum stack system.

251.    The Bartow Facility's process wastewater system encompasses 325 acres, 250 acres of

which are associated with the closed north phosphogypsum stack, and 75 acres which are

associated with the south phosphogypsum stack expansion. Process wastewater enters the

process wastewater system on the western portion of the north phosphogypsum stack and flows

clockwise around the north phosphogypsum stack before being returned to the plant for use. The

eastern and southern portions of the north phosphogypsum stack system have a soil-bentonite

cut-off wall keyed into the clay upper confining layer between the surficial aquifer and the artesian drinking water aquifer.

252.    The process wastewater recirculation system, perimeter dikes, and miscellaneous ditches associated with the south phosphogypsum stack/south phosphogypsum stack expansion occupy approximately 75 acres. This system primarily receives leachate and runoff from the south phosphogypsum stack/south phosphogypsum stack expansion.

253.    Mosaic operates the north phosphogypsum stack system and the south phosphogypsum stack system under an Industrial Wastewater Facility Permit issued by FDEP.

254.    Mosaic's entire Bartow Facility is encompassed by a comprehensive groundwater monitoring system that is monitored and operated in accordance with an approved groundwater monitoring plan under Industrial Wastewater Facility Permit Numbers FL0001589 and FL0267911 issued by FDEP.

255.    In 1998, Florida enacted § 403.4155, F.S., which required FDEP to promulgate rules related to closure and financial responsibility for phosphogypsum stacks. Rules were duly promulgated in Chapter 62-673, F.A.C. As a result, the Bartow Facility is required to annually estimate the cost for closing the phosphogypsum stack system (including water treatment and management costs) at the end of the useful life of the facility and the cost associated with long-term monitoring of the effectiveness of closure (post-closure care or long-term care). Based on the estimated cost for closure and long-term care, the Bartow Facility is required to establish financial assurance to guarantee the funds are available to close the facility at the end of its useful life. To meet its financial assurance obligations under Chapter 62-673.640, F.A.C., the Bartow Facility established a corporate guarantee with FDEP.

## BARTOW FACILITY CLAIMS FOR RELIEF

### *xix.    Nineteenth Claim for Relief*

### *(Failure to Make Hazardous Waste Determinations)*

256.    The allegations in Paragraphs 1 through 36 and 213 through 255 are realleged and incorporated herein by reference.

257.    Pursuant to F.A.C. Rule 62-730.160(1) (40 C.F.R. § 262.11), Defendant, as a generator of solid waste, is required to make a hazardous waste determination.

258.    At the time of the March 7 – 10, 2006 CEI and SI, Defendant  routinely generated the following solid wastes for which hazardous waste determinations had not been made:

        a.    Phosphoric Acid Plant scrubbers' effluent;

        b.    MAP/DAP #3 cooler scrubber effluent;

        c.    FSA not meeting customer specifications (wastewater);

        d.    RO reject;

        e.    Spent sulfuric acid and wastewaters generated from the cleaning of phosphoric acid production pipes and equipment;

        f.    Wastewaters generated from cleaning the Fertilizer Plants' and FSA production pipes and equipment; and

        g.    Spills and leaks from phosphoric acid and fertilizer production.

259.    Based on EPA's knowledge of the processes at the Bartow Facility and the March 7-10, 2006 CEI and SI, EPA determined the following solid wastes are D002 hazardous wastes:

        a.    Phosphoric Acid Plant scrubbers' effluent;

        b.    MAP/DAP #3 cooler scrubber effluent;

        c.    FSA not meeting customer specifications (wastewater);

d.     RO reject;

e.     Spent sulfuric acid wastewaters generated from the cleaning of phosphoric

acid production pipes and equipment;

f.     Wastewaters generated from the cleaning of Fertilizer Plants' and FSA

production pipes and equipment; and

g.     Spills and leaks from phosphoric acid and fertilizer production.

260.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of

RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for each day that it failed to make hazardous

waste determinations for solid wastes generated at its Bartow Facility as required by F.A.C. Rule

62-730.160(1) (40 C.F.R. § 262.11).

### xx.     *Twentieth Claim for Relief*

***(Treatment, Storage and Disposal of Hazardous Waste in the South Phosphogypsum Stack
and the North Phosphogypsum Stack System without a Permit or Interim Status in Violation
of § 403.722 F.S. ((Section 3005 of RCRA, 42 U.S.C. § 6925) and the applicable regulatory
requirements found at F.A.C. Rules 62-730.180 and 62-730.220 (40 C.F.R. Part 264, Subparts
A-G, K and CC, and Part 270)).***

261.    The allegations in Paragraphs 1 through 36 and 213 through 260 are realleged and

incorporated herein by reference.

262.    Section 403.722 F.S. (RCRA Section 3005(a), 42 U.S.C. § 6925(a)), and F.A.C. Rule 62-

730.180 (40 C.F.R. Parts 264, Subparts A-G, K and CC, and 270), require, among other things,

that the owner and operator of a hazardous waste management unit must have a permit or interim

status for the treatment, storage and/or disposal of any hazardous waste during the active life of

the unit.

263.    Since at least March 2006 and continuing to at least the date of the filing of this

Complaint,  Defendant has routinely treated, stored and disposed of the following D002

hazardous wastes in its south phosphogypsum stack system and its north phosphogypsum stack system at the Bartow Facility:

    a.    Phosphoric Acid Plant scrubbers' effluent;

    b.    FSA not meeting customer specifications (wastewater);

    c.    RO reject;

    d.    Spent sulfuric acid wastewaters generated from the cleaning of phosphoric acid production pipes and equipment;

    e.    Wastewaters generated from the cleaning of Fertilizer Plants' and FSA production pipes and equipment; and

    f.    Spills and leaks from phosphoric acid and fertilizer production.

264.    Since at least March 2006 and continuing to at least December 2009,  Defendant routinely treated, stored and disposed of scrubber effluent from the MAP/DAP #3 Cooler Scrubber, a D002 hazardous waste in its south phosphogypsum stack system and its north phosphogypsum stack system at the Bartow Facility.

265.    Defendant neither has a RCRA hazardous waste permit nor interim status for treatment, storage or disposal of hazardous waste in its south phosphogypsum stack system and its north phosphogypsum stack system at the Bartow Facility, and is therefore in violation of § 403.722, F.S. (Section 3005 of RCRA, 42 U.S.C. § 6925) and the applicable regulatory requirements of F.A.C. Rules 62-730.180 and 62.730.220 (40 C.F.R. Parts 264, Subparts A-G, K and CC, and 270).

266.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S.F.S. for each day that it  treated, stored, and/or

disposed of hazardous waste in its south phosphogypsum stack system and its north phosphogypsum stack system at its Bartow Facility without a permit or interim status.

### *xxi.*   *Twenty-First Claim for Relief*

### *(Failure to Perform Land Disposal Determinations)*

267.    The allegations in Paragraphs 1 through 36 and 213 through 266 are realleged and incorporated herein by reference.

268.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. § 268.7(a)(1)), Defendant is required, among other things, to determine if its hazardous waste needs to be treated before it can be land disposed.

269.    Since at least March 2006 and continuing to at least the date of filing of this Complaint, Defendant has routinely generated the following D002 hazardous wastes and failed to determine whether these wastes must be treated before they can be land disposed:

    a.    Phosphoric Acid Plant scrubbers' effluent;

    b.    FSA not meeting customer specifications (wastewater);

    c.    RO reject;

    d.    Spent sulfuric acid and wastewaters generated from the cleaning of phosphoric acid production pipes and equipment;

    e.    Wastewaters generated from cleaning the Fertilizer Plants' and FSA production pipes and equipment; and

    f.    Spills and leaks from phosphoric acid and fertilizer production.

270.    Since at least March 2006 and continuing to at least December 2009, Defendant routinely generated  MAP/DAP #3 cooler scrubber effluent, a D002 hazardous waste and failed to determine whether  this waste  must  be treated before it can be land disposed.

271.    Defendant has violated F.A.C. Rule 62-730.183 (40 C.F.R. § 268.7(a)(1)), for failure to make a hazardous waste determination before land disposal.

272.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.72, F.S. for each day that it failed to determine whether these hazardous wastes generated at its Bartow Facility must be treated before they can be land disposed.

### xxii.    Twenty-Second Claim for Relief
### (Failure to Meet Land Disposal Restrictions for Prohibited Hazardous Wastes)

273.    The allegations in Paragraphs 1 through 36 and 213 through 272 are realleged and incorporated herein by reference.

274.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. § 268.9(c)), Defendant, among other things, is prohibited from land disposing a waste that exhibits a characteristic under F.A.C. Rule 62-730.030(1) (40 C.F.R. Part 261, Subpart C), unless the waste complies with the treatment standards under F.A.C. Rule 62-730.183 (Subpart D of 40 C.F.R. Part 268).

275.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. Part 268, Subpart D), D002 corrosive wastewaters must meet the DEACT code before the waste can be land disposed.

276.    Since at least March 2006 and continuing to at least the date of filing of this Complaint, the Bartow Facility routinely land disposed of the following hazardous wastes in the phosphogypsum stack system that did not meet the DEACT standard for D002 prior to land disposal:

    a.    Phosphoric acid plants' scrubber effluents;

    b.    FSA not meeting customer specifications (wastewater);

    c.    RO reject;

    d.      Spent sulfuric acid and wastewaters generated from the cleaning of phosphoric acid production pipes and equipment;

    e.      Wastewaters generated from cleaning the Fertilizer Plants' and FSA production pipes and equipment; and

    f.      Spills and from phosphoric acid and fertilizer production.

277.    Since at least 2006 and continuing to at least December 2009, Defendant routinely disposed of MAP/DAP #3 cooler scrubber effluent, a D002 (corrosive) hazardous waste, in the phosphogypsum stack system that did not meet the DEACT standard for D002 (corrosivity) prior to land disposal.

278.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for each day that it failed to meet the standards set forth at F.A.C. Rule 62-730.183 (40 C.F.R. §§ 268.40(a)), prior to land disposing prohibited waste in its South phosphogypsum stack system and its North phosphogypsum stack system at the Bartow Facility, in violation of F.A.C. Rule 62-730.183 (40 C.F.R. §§ 268.9(c) and 268.40(a)).

### *xxiii.*    *Twenty-Third Claim for Relief*

### *(Failure to Prepare an Adequate Cost Estimate for Closure)*

279.    The allegations in Paragraphs 1 through 36 and 213 through 278 are realleged and incorporated herein by reference.

280.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), each owner or operator is required to meet the requirements of F.A.C. Rule 62-730.180(1) (40 C.F.R. §264.142) (Cost Estimate for Closure).

281.     Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.142(a)), each owner or operator must have a detailed written estimate, in current dollars, of the cost of closing the facility in accordance with the requirements in 40 C.F.R. §§ 264.111 through 264.115 and the other applicable closure requirements listed in 40 C.F.R. § 264.142(a).

282.     Since at least the March 7 – 10, 2006 CEI and SI, and continuing through at least the date of the filing of this Complaint, the Defendant had not prepared an adequate cost estimate for closure of its hazardous waste units (phosphogypsum stack systems) at its Bartow Facility in violation of the requirements of F.A.C. Rule 62-703.180(1) (40 C.F.R. §§ 264.111 through 264.115), and the other applicable closure requirements listed in F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.142(a)).

283.     Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and the § 403.727, F.S. for each day that it failed to prepare an adequate cost estimate for the closure of its phosphogypsum stack systems at the Bartow Facility.

### *xxiv.     Twenty-Fourth Claim for Relief*

### *(Failure to Establish Adequate Financial Assurance for Closure)*

292.     The allegations in Paragraphs 1 through 36, and 213 through 291 are realleged and incorporated herein by reference.

293.     Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), each owner or operator of a treatment, storage and disposal facility must establish financial assurance for closure of the facility (Financial Assurance for Closure).

294.     Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.143(a)), the owner or operator must choose from the options set forth at 40 C.F.R. § 264.143(a) through (f).

295.    Since at least the March 7 – 10, 2006 CEI and SI, and continuing through the date of the

filing of this Complaint, Defendant had not established adequate financial assurance for closure

of its phosphogypsum stack systems at the Bartow Facility in violation of F.A.C. Rule 62-

730.180(1) (40 C.F.R. § 264.143(a) through (f)).

296.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of

RCRA, 42 U.S.C. § 6928(a), and the § 403.727, F.S. for each day that it failed to establish

adequate financial assurance for closure of its phosphogypsum stack systems at the Bartow

Facility.

### xxv.    *Twenty-Fifth Claim for Relief*

### *(Failure to Prepare an Adequate Cost Estimate for Post-Closure Care)*

297.    The allegations in Paragraphs 1 through 36 and 213 through 296 are realleged and

incorporated herein by reference.

298.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(b)), each owner or operator

of disposal facilities, piles, surface impoundments, tank systems and containment buildings must

prepare a cost estimate for post-closure care of its facility to meet the requirements of F.A.C.

Rule 62-730.180(1) (40 C.F.R. § 264.144) (Cost Estimate for Post-Closure Care).

299.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.144(a)), the owner or operator of

a disposal surface impoundment required under 40 C.F.R. § 264.228 to prepare a contingent

closure and post-closure plan, must have a detailed written estimate, in current dollars, of the

annual cost of post-closure monitoring and maintenance of the facility in accordance with F.A.C.

Rule 62-730.180(1) (40 C.F.R. §§ 264.117 through 264.120, and 40 C.F.R. § 264.288).

300.    Since at least the March 7 – 10, 2006 CEI and SI, and continuing through at least the date

of the filing of this Complaint, Defendant did not have an adequate detailed written estimate, in

current dollars, of the annual cost for post-closure monitoring and maintenance of its

phosphogypsum stack systems in accordance with the applicable post-closure regulations set

forth at F.A.C. Rule 62-730.180(1) (40 C.F.R. §§ 264.117 through 264.120, and 40 C.F.R.

§ 264.228).

301.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of

RCRA, 42 U.S.C. § 6928(a), and the § 403.727, F.S. for each day that it failed to prepare an

adequate post-closure care cost estimate for its phosphogypsum stack systems at the Bartow

Facility.

### xxvi.    Twenty-Sixth Claim for Relief

### (Failure to Establish Adequate Financial Assurance for Post-Closure Care)

302.    The allegations in Paragraphs 1 through 36 and 213 through 301 are realleged and

incorporated herein by reference.

303.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(b)) each owner or operator

of disposal facilities, piles, surface impoundments, tank systems, and containment buildings are

required to meet the requirements of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.145)

(Financial Assurance for Post-Closure Care).

304.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.145), the owner or operator of a

hazardous waste unit subject to the requirements of 40 C.F.R. § 264.144 must establish financial

assurance for post-closure care in accordance with the approved post-closure plan for its facility

60 days prior to the initial receipt of hazardous waste or the effective date of the regulation,

whichever is later.

305.    Since at least the March 7 – 10, 2006 CEI and SI, and continuing through the date of the

filing of this Complaint, Defendant was subject to the requirements of F.A.C. Rule 62-

730.180(1) (40 C.F.R. § 264.145(a)) and had not established adequate financial assurance for post-closure care.

306.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to establish adequate financial assurance for post-closure for its phosphogypsum stack systems.

#### xxvii.    Twenty-Seventh Claim for Relief

#### (Failure to Establish Adequate Financial Assurance for Third Party Liability)

307.    The allegations in Paragraphs 1 through 36 and 213 through 306 are realleged and incorporated herein by reference.

308.    Owners and operators of treatment, storage and disposal facilities are required by F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), to meet the requirements of F.A.C. Rule 62-730.226 (40 C.F.R. § 264.147(a)) (Liability Requirements).

309.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147(a)), the owner or operator of each treatment, storage and disposal facility must establish financial responsibility for bodily injury and property damage to third parties caused by sudden accidental occurrences arising from operations of the facility, and must choose from the options as specified in paragraphs (a) (1) through (6) of 40 C.F.R. § 264.147.

310.    Owners and operators of surface impoundments, landfills, land treatment facilities, or hazardous waste disposal miscellaneous units are required by F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), to meet the requirements of 40 C.F.R. § 264.147(b) and Rule 62-730.226, F.A.C. (Liability Requirements).

311.    F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147(b)), require that the owner or operator of each surface impoundment, landfill, land treatment facility, or hazardous waste disposal

miscellaneous unit must establish financial responsibility for bodily injury and property damage to third parties caused by non-sudden accidental occurrences arising from operations of the facility, and must choose from the options as specified in paragraphs (b)(1) through (6) of 40 C.F.R. § 264.147.

312.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147(b)), owners and operators who are subject to 40 C.F.R. § 264.147(b) may combine coverage for sudden and non-sudden accidental occurrences.

313.    Since at least the March 7 – 10, 2006 CEI and SI, and continuing through the date of the filing of this Complaint, Defendant had not established adequate financial responsibility for third party liability for sudden or non-sudden accidental occurrences using any of the options specified in paragraphs (a)(1) through (6) or (b)(1) through (6) of 40 C.F.R. § 264.147.

314.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to establish adequate financial responsibility for third party liability at its Bartow Facility. Such failure is in violation of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147).

## D.  GENERAL GREEN BAY FACILITY ALLEGATIONS

**Facility and Process Description**

315.    The Green Bay Facility was a production facility for sulfuric acid, phosphoric acid, FSA, DAP and MAP.

316.    In October 2005, Defendant ceased production of DAP at the Green Bay Facility.

317.    In May 2006, Defendant idled the phosphoric acid manufacturing plant and MAP production and ceased all production operations at the Green Bay facility. The Green Bay Facility is currently undergoing closure pursuant to FDEP Closure Permit Number FL0000752.

318.    On March 8, 2006, EPA conducted a CEI and SI at the Green Bay Facility to determine the Facility's compliance with state and federal RCRA requirements.

319.    The Green Bay Facility is approximately 2,545 acres and is located at 4390 State Road 640 West in Bartow, Florida. The Facility began operation in 1965 under the ownership of Farmland Industries, Inc. Primary operations at that time included one production line for the manufacture of phosphoric acid. In 1971, a second fertilizer production plant was constructed within the chemical complex. In November 1991, a joint venture known as Farmland Hydro Limited Partnership was formed between Norsk Hydro USA Inc. and Farmland Industries, Inc. Farmland Hydro LLP purchased an ammonia terminal and pipeline from Seminole Fertilizer Corporation. Farmland Hydro LLP manufactured sulfuric acid, phosphoric acid, DAP, and MAP. Cargill Fertilizer, Inc. purchased the facility in 2002 and continued the previous manufacturing operations. On October 22, 2004, concurrent with the merger of the Cargill fertilizer business with IMC Global, the name of Cargill Fertilizer, LLC was changed to Mosaic Fertilizer, LLC. Mosaic Fertilizer, LLC is the 100% owner of the Green Bay Facility.

320.    Prior to idling all operations at the Green Bay Facility, sulfuric acid was reacted with mineral phosphate rock to produce phosphoric acid (mineral processing). Different concentrations of phosphoric acid were then reacted with ammonia to produce MAP or DAP (chemical manufacturing).

321.    Fluoride vapors emitted during the phosphoric acid evaporation steps were captured, condensed, and concentrated to produce FSA (chemical manufacturing).

322.    Some process wastewater is treated at the Green Bay Facility thorough the use of an RO system. Any unclean discharge (reject) from the RO system, if hazardous, is not mineral processing and is not subject to the Bevill Exclusion.

323.    Operations at the Green Bay Facility fall into several categories, only some of which are mineral processing.

**Sulfuric Acid Production**

324.    The manufacturing of phosphoric acid, FSA, and MAP (DAP was not being produced at the time of the March 8, 2006 CEI) at the Green Bay Facility began with the production of sulfuric acid. The Green Bay Facility produced sulfuric acid in three (3) Sulfuric Acid Plants on-site. The sulfuric acid was stored in large tanks until piped to the two Phosphoric Acid Plants' reactors for use in digesting the phosphate rock to produce phosphoric acid.

325.    Sulfuric acid production is not a mineral processing activity and is not subject to the Bevill Exclusion.

**Phosphoric Acid Production**

326.    Phosphate rock was received from the Defendant's mines by truck or rail car.

327.    Sulfuric acid was piped from the storage tanks in the Sulfuric Acid Plants to reactors within the Phosphoric Acid Plants. In the reactors, the sulfuric acid was mixed with phosphate rock to produce weak phosphoric acid. A by-product of the reaction is calcium sulfate dihydrate, which is typically referred to as phosphogypsum. Phosphogypsum was separated from the weak phosphoric acid by filtration and rinsed with process wastewater that was pumped from the ponds and ditches circling the phosphogypsum stack. After rinsing with process wastewater to recover residual phosphoric acid, the rinsed phosphogypsum was mixed with process wastewater and pumped to the phosphogypsum stack for disposal.

328.    The Green Bay Facility concentrated the weak phosphoric acid to 54% phosphoric acid through evaporation. The first concentration step usually resulted in 40% phosphoric acid. The

second concentration usually resulted in the production of 54% phosphoric acid. A blend of the

weak phosphoric acid and the 54% phosphoric acid was used in MAP production.

329.    Production processes leading to the manufacture of up to MGA are mineral processing.

330.    The diversion of phosphoric acid from the production of MGA for use in chemical

manufacturing (FSA, MAP) is not mineral processing.

331.    Contaminants accumulated in the water used throughout production of phosphoric acid

up to MGA, resulting in aqueous wastes referred to as "process wastewater." Prior to reuse in the

various processes, the process wastewater was cooled and excess contaminants removed.

**Fertilizer Production**

332.    MAP fertilizer products were manufactured at the facility in two (2) Plants designated as

the North MAP/DAP Plant and the South MAP/DAP Plant. Only the South MAP/DAP Plant was

operational during the March 8, 2006 CEI.

333.    MAP was produced by reacting phosphoric acid solution produced on site with ammonia.

The resultant ammoniated phosphoric acid slurry was piped from the reactor to pugmills

(granulators) where the product was ground and sprayed with acid to adjust the size of the

granules. The product was then sent to a drier to remove residual water. The dried granules were

cooled and screened. The final product was then conveyed to a MAP/DAP storage warehouse

until shipment.

334.    MAP fertilizer production is chemical manufacturing and as such, is not subject to the

Bevill Exclusion.

**Air Pollution Control Devices (Phosphoric Acid and Fertilizer Production)**

335.    Air particulates emitted from the phosphoric acid production process were captured

("scrubbed") from the reactors, filters, and other production equipment (e.g. clarifiers and

67

storage tanks) using scrubbers. The scrubbing liquid for scrubbers at the Green Bay Facility was process wastewater that was pumped from the phosphogypsum stack system through the scrubbers to collect particulate air emissions in a single pass through the scrubber before being discharged back into the phosphogypsum stack system.

336.    Most of the ammonia and fugitive air particulates emitted from the reactor, granulator, cooler, dryer, etc., during MAP production were captured in a series of scrubbers similar to the phosphoric acid scrubbers described above. The Green Bay Facility MAP scrubbers were designated as the "Cooler Scrubber," the "Dryer Scrubber," the "R/G [*Reactor/ Granulator*] Scrubber," and the "S/M [*Screens & Mills*] Scrubber." The R/G Scrubber was segregated into two components: the R/G Scrubber Acid Side, and the R/G Scrubber Water Side. In addition to the typical configuration of the aforementioned scrubbers, the South Plant was equipped with a scrubber that interrupted the gas flow from the S/M Fan and from the Dryer Fan exiting the Dryer Stack. This scrubber was referred to as the "Cross Flow Scrubber." The input for the Cross Flow Scrubber (CFS) was process wastewater and the effluent was piped to the CFS Tank. The CFS Tank also had a process wastewater input and discharged to the R/G Scrubber Water Side. The R/G Scrubber discharged to the phosphogypsum stack system via the "Hotwell Tank/Sump." The only scrubber at the South Plant that discharged to the phosphogypsum stack system [via the Hotwell Tank/Sump] was the R/G Scrubber. Although a majority of scrubber water from the Cooler Scrubber, the S/M Scrubber, and the Dryer Scrubber recirculated through a "Recycle Tank," all of the scrubbers had at least one process wastewater input which acted as either the scrubber medium or as a knock-out stream to remove additional contaminants after the gas stream left the scrubber and before it was vented to the Title V permitted stack. A portion of

all of these process wastewater streams were recirculated to the CFS Tank and were ultimately discharged to the phosphogypsum stack system.

337.    The operation of air pollution control devices is not part of mineral processing and as such, the wastewaters from the scrubbers are not subject to the Bevill Exclusion.

**Pipe and Tank Cleaning**

338.    Mosaic cleaned its pipes, tanks, evaporators, and other process equipment throughout the phosphoric acid and fertilizer production areas on a regular basis, using process wastewater, phosphogypsum stack system wastewater, or a mixture of either with sulfuric acid as the cleaning agent. After use, the spent corrosive hazardous cleaning agent was discharged to the floors of the phosphoric acid plants. The washdown waters flowed to a ditch on the south side of the Phosphoric Acid Plants. The ditch then connected to the RG Combined Sump (also called the "Hotwell Tank/Sump" in MAP South, which subsequently flowed to the phosphogypsum stack system. Cleaning wastes were generated on a daily basis during normal plant operations and during scheduled maintenance periods.

339.    Pipe and tank cleaning operations are not part of mineral processing and the wastewaters from such cleaning operations are not subject to the Bevill Exclusion.

**Reverse Osmosis System for Water Treatment**

340.    As part of its closure plan set forth in the closure permit for the Green Bay Facility and the water management plan required by Chapter 62-673 F.A.C., Mosaic included the operation of a RO system for the treatment of process wastewater through RO membranes for separation into a purified water stream ("permeate") and a concentrated process wastewater stream ("reject"). The Green Bay Facility returns the reject stream to the phosphogypsum stack system

and discharges the permeate to the Alafia River watershed as authorized by Permit No.

FL0000752.

341.    The RO system receives process wastewater inputs from the Green Bay Facility

phosphogypsum stack system and from the Regional Holding Pond, which has commingled

process wastewater from Defendant's Bartow, Mulberry, and Green Bay Facilities.

342.    RO system operation is not part of mineral processing. The reject and any cleaning waste

generated at the RO system are not subject to the Bevill Exclusion.

**Phosphogypsum Stack Systems**

343.    The Green Bay Facility operated one unlined (closed) phosphogypsum stack and one

lined phosphogypsum stack. Closure of the lined (north) phosphogypsum stack system is

authorized under Permit Number FL0000752 which was issued by the FDEP on February 10,

2014 (expiring February 9, 2019). This permit incorporated applicable regulatory requirements

for FDEP's wastewater program and its state authorized NPDES program under Section 402 of

the Clean Water Act, 33 U.S.C.

§ 1251 et seq. Closure of the unlined (south) phosphogypsum stack is under the facility's Closure

Permit Number FLA267929.

344.    Mosaic's entire Green Bay Facility is encompassed by a comprehensive groundwater

monitoring system that is monitored and operated in accordance with an approved groundwater

monitoring plan under Industrial Wastewater Facility Permit Number FL0000752 issued by

FDEP.

345.    In 1998, Florida enacted § 403.4155, F.S., which required FDEP to promulgate rules

related to closure and financial responsibility for phosphogypsum stacks. Rules were duly

promulgated in F.A.C. Chapter 62-673. As a result, Mosaic is required to annually estimate the

cost for closing the phosphogypsum stack systems (including water treatment and management costs) at the end of the useful life of the facility and the cost associated with long-term monitoring of the effectiveness of closure (post-closure care or long-term care). Based on the estimated cost for closure and long-term care, Mosaic is required to establish Financial Assurance to guarantee the funds are available to close the facility at the end of the useful life. To meet its Financial Assurance obligations under F.A.C. Rule 62-673.640, Mosaic established a corporate guarantee with FDEP.

**Spills & Leaks of Phosphoric Acid and Sulfuric Acid**

346.    In Mosaic's phosphoric acid and fertilizer production, spills and leaks of phosphoric acid and sulfuric acid occurred.  These spills and leaks commingled with process wastewater being transported from the production areas to the phosphogypsum stack systems.

347.    Spills and leaks of phosphoric acid are not part of mineral processing and are therefore not subject to the Bevill Exclusion.

### GREEN BAY FACILITY CLAIMS FOR RELIEF

#### xxviii.    *Twenty-Eighth Claim for Relief*

#### *(Failure to Make Hazardous Waste Determinations)*

348.    The allegations in Paragraphs 1 through 36 and 315 through 347 are realleged and incorporated herein by reference.

349.    Pursuant to F.A.C. Rule 62-730.160(1) (40 C.F.R. § 262.11), Defendant, as a generator of solid waste, is required to make a hazardous waste determination.

350.    At the time of the March 8, 2006 Green Bay Facility CEI and SI and continuing to at least May 2006, Defendant  routinely generated the following solid wastes for which hazardous waste determinations had not been made:

    a.    Phosphoric Acid Plants scrubbers' effluent;

    b.    South MAP/DAP plant scrubber effluent;

    c.    RO reject;

    d.    Spent sulfuric acid and wastewaters generated from cleaning phosphoric acid production pipes and equipment; and

    e.    Spills and leaks from phosphoric acid and MAP production.

351.    Based on EPA's knowledge of the processes at the Green Bay Facility and the March 8, 2006 CEI and SI, EPA determined the following solid wastes are D002 hazardous wastes:

    a.    Phosphoric Acid Plants scrubbers' effluent;

    b.    RO reject;

    c.    Spent sulfuric acid and wastewaters generated from cleaning phosphoric acid production pipes and equipment;

    d.    Wastewaters generated from cleaning the South MAP/DAP Plant production equipment; and

    e.    Spills and leaks from phosphoric acid and MAP production.

352.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for each day that it failed to make hazardous waste determinations for solid wastes generated at its Green Bay Facility as required by F.A.C. Rule 62-730.160(1) (40 C.F.R. § 262.11).

*xxix.*   *Twenty-Ninth Claim for Relief*

*(Treatment, Storage and Disposal of Hazardous Waste in the RG Recovery Return Sump and the Phosphogypsum Stack System Without a Permit or Interim Status in Violation of § 403.722 F.S. ((Section 3005 of RCRA, 42 U.S.C. § 6925) and the applicable regulatory requirements found at F.A.C. Rules 62-730.180 and 62-730.220 (40 C.F.R. Part 264, Subparts A-G, K and CC, and Part 270)).*

353.    The allegations in Paragraphs 1 through 36 and 315 through 352 are realleged and incorporated herein by reference.

354.    Section 403.722 F.S. (RCRA Section 3005(a), 42 U.S.C. § 6925(a)), and F.A.C. Rule 62-730.180 (40 C.F.R. Parts 264, Subparts A-G, K and CC, and 270), require, among other things, that the owner and operator of a hazardous waste management unit must have a permit or interim status for the treatment, storage and/or disposal of any hazardous waste during the active life of the unit.

355.    Since at least March 8, 2006 and  continuing to at least the date of filing of this Complaint, Defendant routinely treated, stored and disposed of the following D002 hazardous wastes in the RG Recovery Return Sump and/or the phosphogypsum stack system at the Green Bay Facility:

> a.   RO reject;
>
> b.   Phosphoric Acid Plants scrubbers' effluent;
>
> c.   South MAP/DAP Plant's scrubbers
>
> d.   Spent sulfuric acid and wastewaters generated from cleaning phosphoric acid production pipes and equipment; and
>
> e.   Spills and leaks from phosphoric acid and fertilizer production.

284.    Defendant neither has a RCRA hazardous waste permit nor interim status for treatment, storage or disposal of hazardous waste in its RG Recovery Sump or phosphogypsum stack

systems, and has therefore violated § 403.722, F.S. (Section 3005 of RCRA, 42 U.S.C. § 6925) and the applicable regulatory requirements of F.A.C. Rules 62-730.180 and 62.730.220 (40 C.F.R. Parts 264, Subparts A-G, K and CC, and 270).

356.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it treated, stored, and/or disposed of hazardous waste in its RG Recovery Sump and phosphogypsum stack systems at its Green Bay Facility without a permit or interim status.

*xxx.*    ***Thirtieth Claim for Relief***

***(Failure to Perform Land Disposal Determinations)***

357.    The allegations in Paragraphs 1 through 36 and 315 through 356 are realleged and incorporated herein by reference.

358.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. § 268.7(a)(1)), Defendant is required, among other things, to determine if its hazardous waste needs to be treated before it can be land disposed.

359.    Since at least March 8, 2006 and continuing to at least May 2006, Defendant routinely generated the following hazardous wastes and failed to determine whether these wastes must be treated before they can be land disposed:

        a.    Phosphoric Acid Plants scrubbers' effluent;

        b.    South MAP/DAP Plant scrubber effluent;

        c.    RO reject;

        d.    Spent sulfuric acid and wastewaters generated from cleaning phosphoric
        acid production pipes and equipment; and

        e.    Spills and leaks from the production of phosphoric acid and MAP.

360.    Defendant has violated F.A.C. Rule 62-730.183 (40 C.F.R. § 268.7(a)(1)), for failure to make hazardous waste determinations before land disposal.

361.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.72, F.S. for each day that it failed to determine whether these hazardous wastes generated at its Green Bay Facility must be treated before they can be land disposed.

### xxxi.    *Thirty-First Claim for Relief*

### *(Failure to Meet Land Disposal Restrictions for Prohibited Hazardous Wastes)*

362.    The allegations in Paragraphs 1 through 36 and 315 through 361 are realleged and incorporated herein by reference.

363.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. § 268.9(c)), Defendant, among other things, is prohibited from land disposing a waste that exhibits a characteristic under F.A.C. Rule 62-730.030 (Subpart C of 40 C.F.R. Part 261), unless the waste complies with the treatment standards under F.A.C. Rule 62-730.183 (Subpart D of 40 C.F.R. Part 268).

364.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. Part 268, Subpart D), D002 corrosive wastewaters, must meet the DEACT treatment standard before the waste can be disposed.

365.    Pursuant to F.A.C. Rule 62-730.183 (Subpart D of 40 C.F.R. Part 268), the "Universal Treatment Standards" regulations, require, among other things, that prohibited wastewaters must contain no more than 1.4 mg/L of arsenic to be land disposed.

366.    Based on the results from the March 8, 2006 CEI and SI and EPA's knowledge of the composition of the Mosaic Green Bay Facility's hazardous wastes, Mosaic was land disposing the following wastes in the phosphogypsum stack system, which wastes did not meet the DEACT standard for D002 wastes prior to land disposal:

    a.  Phosphoric Acid Plants scrubbers' effluent;

    b.  RO reject:

    c.  Spent sulfuric acid and wastewaters generated from cleaning phosphoric

acid production pipes and equipment; and

    d.  Spills and leaks from the production of phosphoric acid and MAP.

367. Based on the results of the March 8, 2006 CEI and SI and EPA's knowledge of the

composition of the Mosaic Green Bay Facility's hazardous wastes, the South MAP/DAP Plant

scrubber effluent was being land disposed in the phosphogypsum stack systems and did not meet

the DEACT standard for D002 (corrosivity) or the Universal Treatment Standard of 1.4 mg/L of

arsenic prior to land disposal.

368. Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of

RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for each day that it failed to meet the standards

set forth at F.A.C. Rule 62-730.183 (40 C.F.R. Subpart D) prior to land disposing prohibited

waste in its phosphogypsum stack systems at the Green Bay Facility, is in violation of F.A.C.

Rule 62-730.183 (40 C.F.R. § 268.9(c), and Subpart D).

      *xxxii.*  **_Thirty-Second Claim for Relief_**

      ***(Failure to Prepare an Adequate Cost Estimate for Closure)***

369. The allegations in Paragraphs 1 through 36 and 315 through 368 are realleged and

incorporated herein by reference.

370. Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), each owner or operator

is required to meet the requirements of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.142) (Cost

Estimate for Closure).

371.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.142(a)), each owner or operator must have a detailed written estimate, in current dollars, of the cost of closing the facility in accordance with the requirements in 40 C.F.R. §§ 264.111 through 264.115, and the other applicable closure requirements listed in 40 C.F.R. § 264.142(a).

372.    Since at least the March 8, 2006 Green Bay Facility CEI and SI, and continuing through at least the date of the filing of this Complaint, Defendant had not established an adequate cost estimate for closure of its hazardous waste units (phosphogypsum stack systems) at its Green Bay Facility in violation of the requirements F.A.C. Rule 62-730.180(1) (40 C.F.R. §§ 264.111 through 264.115) and the other applicable closure requirements listed in 40 C.F.R. § 264.142(a).

373.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and the § 403.727, F.S. for each day that it failed to establish an adequate cost estimate for the closure of its Green Bay Facility.

### *xxxiii.*     *Thirty-Third Claim for Relief*

### *(Failure to Establish Adequate Financial Assurance for Closure)*

374.    The allegations in Paragraphs 1 through 36 and 315 through 373 are realleged and incorporated herein by reference.

375.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), each owner or operator of a treatment, storage and disposal facility must establish financial assurance for closure of the facility (Financial Assurance for Closure).

376.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.143(a)), the owner or operator must choose from the options set forth at 40 C.F.R. § 264.143(a) through (f).

377.    Since at least the March 8, 2006 Green Bay Facility CEI and SI, and continuing through at least the date of the filing of this Complaint, Defendant had not established adequate financial

assurance for closure of its Green Bay phosphogypsum stack systems in violation of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.143(a) through (f)).

378.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and the § 403.727, F.S. for each day that it failed to establish adequate financial assurance for closure of its Green Bay Facility's phosphogypsum stack systems.

*xxxiv.*    ***Thirty-Fourth Claim for Relief***

***(Failure to Prepare an Adequate Cost Estimate for Post-Closure Care)***

379.    The allegations in Paragraphs 1 through 36 and 315 through 378 are realleged and incorporated herein by reference.

380.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(b)), each owner or operator of disposal facilities, piles, surface impoundments, tank systems and containment buildings, must prepare a cost estimate for post-closure of its facility to meet the requirements of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.144) (Cost Estimate for Post-Closure Care).

381.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.144(a)), the owner or operator of a disposal surface impoundment required under 40 C.F.R. § 264.228 to prepare a contingent closure and post-closure plan, must have a detailed written estimate, in current dollars, of the annual cost of post-closure monitoring and maintenance of the facility in accordance with F.A.C. Rule 62-730.180(1) (40 C.F.R. §§ 264.117 through 264.120, and 40 C.F.R. § 264.228.)

382.    Since at least the March 8, 2006 Green Bay Facility CEI and SI, and continuing through at least the date of the filing of this Complaint, Defendant did not have an adequate detailed written estimate, in current dollars, of the annual cost for post-closure monitoring and maintenance of its Green Bay Facility's phosphogypsum stack systems in accordance with the

applicable post-closure regulations set forth at F.A.C. Rule 62-730.180(1) (40 C.F.R. §§ 264.117 through 264.120, and 40 C.F.R. § 264.228).

383.     Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and the § 403.727, F.S. for each day that it failed to prepare an adequate post-closure care cost estimate for its Green Bay Facility's phosphogypsum stack systems.

*xxxv.*     ***Thirty-Fifth Claim for Relief***

***(Failure to Establish Adequate Financial Assurance for Post-Closure Care)***

384.     The allegations in Paragraphs 1 through 36 and 315 through 383 are realleged and incorporated herein by reference.

385.     Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(b)), each owner or operator of disposal facilities, piles, surface impoundments, tank systems and containment buildings are required to meet the requirements of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.145) (Financial Assurance for Post-Closure Care).

386.     Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.145), the owner or operator of a hazardous waste unit subject to the requirements of 40 C.F.R. § 264.144 must establish financial assurance for post-closure care in accordance with the approved post-closure plan for its facility 60 days prior to the initial receipt of hazardous waste or the effective date of the regulation, whichever is later.

387.     Since at least the March 8, 2006 Green Bay Facility CEI and SI, and continuing through the date of the filing of this Complaint, Defendant was subject to the requirement of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.145) and had not established adequate financial assurance for post-closure care.

388.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of

RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to establish adequate

financial assurance for post-closure care for its Green Bay Facility.

*xxxvi.    Thirty Sixth Claim for Relief*

*(Failure to Establish Adequate Financial Assurance for Third Party Liability)*

389.    The allegations in Paragraphs 1 through 36 and 315 through 389 are realleged and

incorporated herein by reference.

390.    Owners and operators of treatment, storage and disposal facilities are required by F.A.C.

Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), to meet the requirements of 40 C.F.R.

§ 264.147(a) and F.A.C. Rule 62-730.226, F.A.C. (Liability Requirements).

391.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147(a)), the owner or operator of

each treatment, storage and disposal facility must establish financial responsibility for bodily

injury and property damage to third parties caused by sudden accidental occurrences arising from

operations of the facility, and must choose from the options as specified in paragraphs (a) (1)

through (6) of 40 C.F.R. § 264.147.

392.    Owners and operators of surface impoundments, landfills, land treatment facilities, or

hazardous waste disposal miscellaneous units are required by F.A.C. Rule 62-730.180(1) (40

C.F.R. § 264.140(a)), to meet the requirements of 40 C.F.R. § 264.147(b) and F.A.C. Rule 62-

730.226, F.A.C. (Liability Requirements).

393.    F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147(b)), require that the owner or operator

of each surface impoundment, landfill, land treatment facility, or hazardous waste disposal

miscellaneous unit must establish financial responsibility for bodily injury and property damage

to third parties caused by non-sudden accidental occurrences arising from operations of the

facility, and must choose from the options as specified in paragraphs (b)(1) through (6) of 40 C.F.R. § 264.147.

394.    Pursuant to F.A.C. Rule 62-730.180(1) (C.F.R. § 264.147(b)), owners and operators who are subject to 40 C.F.R. § 264.147(b) may combine coverage for sudden and non-sudden accidental occurrences.

395.    Since at least the March 8, 2006 Green Bay Facility CEI and SI, and continuing through at least the date of the filing of this Complaint, Defendant had not established adequate financial responsibility for third party liability for sudden or non-sudden accidental occurrences using any of the options specified in paragraphs (a)(1) through (6) or (b)(1) through (6) of 40 C.F.R. § 264.147.

396.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to establish adequate financial responsibility for third party liability at its Green Bay Facility. Such failure is in violation of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147).

## E.  GENERAL MULBERRY FACILITY ALLEGATIONS

**Facility and Process Description**

397.    The Mulberry Facility was a phosphoric acid and sulfuric acid production facility.

398.    As of 2000, the Mulberry phosphoric acid plant was no longer operational and has since been completely demolished. The sulfuric acid plant remained operational.

399.    Until 2001, the Mulberry Facility was owned by Mulberry Phosphates. Upon the bankruptcy of Mulberry Phosphates, Cargill Crop Nutrition, the predecessor to Mosaic Fertilizer, purchased the sulfuric acid production operations at the site. On October 22, 2004, concurrent

with the merger of the Cargill fertilizer business with IMC Global, the name of Cargill Fertilizer, LLC was changed to Mosaic Fertilizer, LLC.

400.    On December 10 – 11, 2003, EPA conducted a CEI, and on March 9, 2006, EPA conducted a CEI and SI at the Mulberry Facility to determine the Facility's compliance with state and federal RCRA requirements.

401.    In September 2008, all sulfuric acid production operations ceased and the sulfuric acid plant has since been demolished.

**Sulfuric Acid Production**

402.    The Mulberry Facility produced sulfuric acid in one plant on-site.

403.    Hazardous waste generated from the Mulberry Facility sulfuric acid plant included wastewater from regenerating the ion exchange resin within demineralizer units. The cationic exchange resin was regenerated with sulfuric acid and the anionic exchange resin was regenerated with sodium hydroxide. The Mulberry Facility discharged the sulfuric acid hazardous regeneration wastewater to a cracked concrete pad. The wastewater flowed over the concrete pad to a concrete sump that was interconnected to an earthen surface impoundment of approximately 60 feet by 30 feet. This earthen surface impoundment was also referred to as the Mosquito Pond.

404.    By March 2006, the Mosquito Pond had been emptied, treated with caustic, filled with soil and provided a grass cover.

405.    Sulfuric acid manufacturing and storage is not mineral processing and wastes generated from this process are not subject to the Bevill Exclusion.

82

## MULBERRY FACILITY CLAIMS FOR RELIEF

### *xxxvii.   Thirty-Seventh Claim for Relief*

### *(Failure to Make Hazardous Waste Determinations)*

406.    The allegations in Paragraphs 1 through 36 and 397 through 405 are realleged and incorporated herein by reference.

407.    Pursuant to F.A.C. Rule 62-730.160(1) (40 C.F.R. § 262.11), Defendant, as a generator of solid waste, is required to make a hazardous waste determination.

408.    At the time of the December 10 -11, 2003 CEI and March 9, 2006 CEI and SI, Defendant routinely generated wastewaters from the regeneration of demineralizer units associated with sulfuric acid production for which hazardous waste determinations had not been made.

409.    Based on EPA's knowledge of the processes at the Mulberry Facility and the December 10 – 11, 2003 CEI and March 9, 2006 CEI and SI, EPA determined the wastewaters from the regeneration of demineralizer units associated with sulfuric acid production were D002 hazardous wastes.

410.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for each day that it  failed to make a hazardous waste determination for solid wastes generated at its Mulberry Facility as required by F.A.C. Rule 62-730.160(1) (40 C.F.R. § 262.11).

### xxxviii.   *Thirty-Eighth Claim for Relief*

*(Treatment, Storage and Disposal of Hazardous Waste at the Sulfuric Acid Plant in a Surface Impoundment Without a Permit or Interim Status in Violation of § 403.722 F.S. ((Section 3005 of RCRA, 42 U.S.C. § 6925) and the applicable regulatory requirements found at F.A.C. Rules 62-730.180 and 62-730.220 (40 C.F.R. Part 264, Subparts A-G, K and CC, and Part 270)).*

411.   The allegations in Paragraphs 1 through 36 and 397 through 410 are realleged and incorporated herein by reference.

412.   Section 403.722, F.S. (RCRA Section 3005(a), 42 U.S.C. § 6925(a)), and F.A.C. Rule 62-730.180 (40 C.F.R. Parts 264, Subparts A-G, K and CC, and 270), require, among other things, that the owner and operator of a hazardous waste management unit must have a permit or interim status for the treatment, storage and/or disposal of any hazardous waste during the active life of the unit.

413.   Since at least 2003 and continuing to at least March 2008, Defendant  routinely treated, stored and disposed of wastewaters from sulfuric acid production, D002 hazardous waste, in or near the Mosquito Pond, a surface impoundment.

285.   Defendant neither had a RCRA hazardous waste permit nor interim status for treatment, storage or disposal of hazardous waste in the Mosquito Pond and has therefore violated § 403.722, F.S. (Section 3005 of RCRA, 42 U.S.C. § 6925) and the applicable regulatory requirements of F.A.C. Rules 62-730.180 and 62.730.220 (40 C.F.R. Parts 264, Subparts A-G, K and CC, and 270).

414.   Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it treated, stored, and/or disposed of hazardous waste in its surface impoundment at its Mulberry Facility without a permit or interim status.

*xxxix.*   ***Thirty-Ninth Claim for Relief***

***(Failure to Perform Land Disposal Determination)***

415.    The allegations in Paragraphs 1 through 36 and 397 through 414 are realleged and incorporated herein by reference.

416.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. § 268.7(a)(1)), Defendant is required, among other things, to determine if its hazardous waste needs to be treated before it can be land disposed.

417.    Since at least 2003 and continuing to at least March 2008, Defendant routinely generated wastewaters from the regeneration of demineralizer units associated with sulfuric acid production, which are D002 hazardous wastes, and failed to determine whether these wastes must be treated before they can be land disposed.

418.    Defendant has violated F.A.C. Rule 62-730.183 (40 C.F.R. § 268.7(a)(1)), for failure to make a hazardous waste determination before land disposal.

419.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to determine whether these hazardous wastes generated at its Mulberry Facility must be treated before they can be land disposed.

*xl.*   ***Fortieth Claim for Relief***

***(Failure to Meet Land Disposal Restrictions for Prohibited Hazardous Wastes)***

420.    The allegations in Paragraphs 1 through 36 and 397 through 419 are realleged and incorporated herein by reference.

421.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. § 268.9(c)), Defendant, among other things, is prohibited from land disposing a waste that exhibits a characteristic under F.A.C. Rule

62-730.030(1) (Subpart C of 40 C.F.R. Part 261) unless the waste complies with the treatment standards under F.A.C. Rule 62-730.183 (Subpart D of 40 C.F.R. Part 268).

422.     Pursuant to F.A.C. Rule 62-730.183 (Subpart D of 40 C.F.R. Part 268), corrosive wastewaters, must meet the DEACT standard before the waste can be land disposed.

423.     Since at least 2003 and continuing to at least March 2008, Defendant had land disposed of wastewaters from the regeneration of demineralizer units associated with sulfuric acid production, which are D002 hazardous waste, in the Mosquito Pond without meeting the DEACT standard prior to land disposal.

424.     Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for each day that it failed to meet the DEACT standard set forth at F.A.C. Rule 62-730.183 (40 C.F.R. § 268.40(a)) prior to land disposing prohibited waste in surface impoundments at the Mulberry Facility,  in violation of F.A.C. Rule 62-730.183 (40 C.F.R. §§ 268.40(a) and 268.9(c)).

## F.  GENERAL SOUTH PIERCE FACILITY ALLEGATIONS

**Facility and Process Description**

425.     The South Pierce Facility was formerly a sulfuric acid, phosphoric acid, FSA, MGA, and granular triple superphosphate (GTSP) production facility.

426.     On May 31, 2006, the South Pierce Facility idled all operations with the exception of sulfuric acid production.

427.     On November 17, 2010, the South Pierce Facility received a final closure permit from FDEP and began closing its phosphogypsum stack system.

428.     The South Pierce Facility manufactures 1800 tons of sulfuric acid per day.

429.    On December 9, 2003, EPA conducted a CEI. On November 18, 2004, EPA conducted a

CEI, and on December 16, 2004, EPA conducted a SI at the South Pierce Facility to determine

the facility's compliance with state and federal RCRA requirements.

**Sulfuric Acid Production**

430.    The South Pierce Facility produces sulfuric acid in two plants on-site.

431.    Hazardous waste generated from the South Pierce Facility's sulfuric acid plants include

wastewater from regenerating the ion exchange resin within demineralizer units. The cationic

exchange resin is regenerated with sulfuric acid and the anionic exchange resin is regenerated

with sodium hydroxide. The South Pierce Facility discharged hazardous regeneration wastewater

to an elementary neutralization unit (ENU) for treatment. On 20 days in 2002 and 166 days in

2003, the wastewater from the ENU was not properly treated and was still hazardous after

leaving the ENU. The ENU discharged to an earthen ditch that flowed to an earthen surface

impoundment.

432.    Sulfuric acid manufacturing and storage is not mineral processing and wastes generated

from this process are not subject to the Bevill Exclusion.

### SOUTH PIERCE FACILITY CLAIMS FOR RELIEF

#### xli.   *Forty-First Claim for Relief*

#### *(Failure to Make Hazardous Waste Determinations)*

433.    The allegations in Paragraphs 1 through 36 and 425 through 432 are realleged and

incorporated herein by reference.

434.    Pursuant to F.A.C. Rule 62-730.160(1) (40 C.F.R. § 262.11), Defendant, as a generator of

solid waste, is required to make a hazardous waste determination.

435.    At the time of the December 9, 2003 CEI, the November 18, 2004 CEI, and the December 16, 2004 SI, Defendant routinely generated wastewaters from the regeneration of demineralizer units associated with sulfuric acid production for which hazardous waste determinations had not been made.

436.    Based on EPA's knowledge of the processes at the South Pierce Facility and the December 9, 2003 CEI, the November 18, 2004 CEI, and the December 16, 2004 SI, EPA determined the wastewaters from the regeneration of demineralizer units associated with sulfuric acid production are hazardous.

437.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for each day that it failed to make a hazardous waste determination for solid wastes generated at its South Pierce Facility as required by F.A.C. Rule 62-730.160(1) (40 C.F.R. § 262.11).

### xlii.   *Forty-Second Claim for Relief*

*(Treatment, Storage and Disposal of Hazardous Waste at the Sulfuric Acid Plant in a Surface Impoundment without a Permit or Interim Status in Violation of § 403.722 F.S. ((Section 3005 of RCRA, 42 U.S.C. § 6925) and the applicable regulatory requirements found at F.A.C. Rules 62-730.180 and 62-730.220 (40 C.F.R. Part 264, Subparts A-G, K and CC, and Part 270)).*

438.    The allegations in Paragraphs 1 through 36 and 425 through 437 are realleged and incorporated herein by reference.

439.    Section 403.722 F.S. (RCRA Section 3005(a), 42 U.S.C. § 6925(a)), and F.A.C. Rule 62-730.180 (40 C.F.R. Parts 264, Subparts A-G, K and CC, and 270), require, among other things, that the owner and operator of a hazardous waste management unit must have a permit or interim status for the treatment, storage and/or disposal of any hazardous waste during the active life of the unit.

440.    Since at least 2003 and continuing to at least the filing date of this Complaint, Defendant has routinely treated, stored and disposed of wastewaters from sulfuric acid production, a D002 hazardous waste, in its surface impoundment.

286.    Defendant neither has a RCRA hazardous waste permit nor interim status for treatment, storage or disposal of hazardous waste in its surface impoundment, and has therefore violated § 403.722, F.S. (Section 3005 of RCRA, 42 U.S.C. § 6925) and the applicable regulatory requirements of F.A.C. Rules 62-730.180 and 62.730.220 (40 C.F.R. Parts 264, Subparts A-G, K and CC, and 270).

441.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it treated, stored, and/or disposed of hazardous waste in its surface impoundment at its South Pierce Facility without a permit or interim status.

### xliii.   *Forty-Third Claim for Relief*

#### *(Failure to Perform Land Disposal Determinations)*

442.    The allegations in Paragraphs 1 through 36 and 425 through 441 are realleged and incorporated herein by reference.

443.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. § 268.7(a)(1)), Defendant is required, among other things, to determine if its hazardous waste needs to be treated before it can be land disposed.

444.    For 20 days in 2002 and 166 days in 2003, Defendant generated wastewaters from the sulfuric acid production equipment in the Sulfuric Acid Plant, D002 hazardous wastes, and failed to determine whether these wastes must be treated before they can be land disposed.

445.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.72, F.S. for each day that it failed to determine whether these hazardous wastes generated at its South Pierce Facility must be treated before they can be land disposed.

### xliv.    *Forty-Fourth Claim for Relief*

### *(Failure to Meet Land Disposal Restrictions for Prohibited Hazardous Wastes)*

446.    The allegations in Paragraphs 1 through 36 and 425 through 445 are realleged and incorporated herein by reference.

447.    Pursuant to F.A.C. Rule 62-730.183 (40 C.F.R. § 268.9(c)), Defendant, among other things, is prohibited from land disposing a waste that exhibits a characteristic under F.A.C. Rule 62-730.030(1) (Subpart C of 40 C.F.R. Part 261), unless the waste complies with the treatment standards under F.A.C. Rule 62-730.183 (Subpart D of 40 C.F.R. Part 268).

448.    Pursuant to F.A.C. Rule 62-730.183 (Subpart D of 40 C.F.R. Part 268), corrosive wastewaters must meet the DEACT standard before the waste can be disposed.

449.    For 20 days in 2002 and 166 days in 2003, Mosaic land disposed of wastewaters from the sulfuric acid production equipment in the Sulfuric Acid Plant, D002 hazardous wastes, in a surface impoundment, which wastes did not meet the DEACT standard prior to land disposal.

450.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S., for each day that it failed to meet the standards set forth at F.A.C. Rule 62-730.183 (40 C.F.R. § 268.40(a)) prior to land disposing prohibited waste in its surface impoundment at the South Pierce Facility, in violation of F.A.C. Rule 62-730.183 (40 C.F.R. § 268.40(a)).

### xlv. *Forty-Fifth Claim for Relief*

### *(Failure to Prepare an Adequate Cost Estimate for Closure)*

451.    The allegations in Paragraphs 1 through 36 and 425 through 450 are realleged and incorporated herein by reference.

452.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), each owner or operator is required to meet the requirements of 40 C.F.R. § 264.142 (Cost Estimate for Closure).

453.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.142(a)), each owner or operator must have a detailed written estimate, in current dollars, of the cost of closing the facility in accordance with the requirements in 40 C.F.R. §§ 264.111 through 264.115 and the other applicable closure requirements listed in 40 C.F.R. § 264.142(a).

454.    Since at least the December 9, 2003 and November 18, 2004 CEIs, and the December 16, 2004 CEI and SI, and continuing through at least the date of the filing of this Complaint, Defendant had not prepared an adequate cost estimate for closure of its South Pierce Facility in violation of the requirements of F.A.C. Rule 62-730.180(1) (40 C.F.R. §§ 264.111 through 264.115) and the other applicable closure requirements listed in 40 C.F.R. § 264.142(a).

455.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and the § 403.727, F.S. for each day that it failed to prepare an adequate cost estimate for the closure of its South Pierce surface impoundment.

### xlvi. *Forty-Sixth Claim for Relief*

### *(Failure to Establish Adequate Financial Assurance for Closure)*

456.    The allegations in Paragraphs 1 through 36 and 425 through 455 are realleged and incorporated herein by reference.

457.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), each owner or operator

of a treatment, storage and disposal facility must establish financial assurance for closure of the

facility (Financial Assurance for Closure).

458.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. §§ 264.143(a)), the owner or operator

must choose from the options set forth at F.A.C. Rule 62-226(5) and (6) (40 C.F.R.

§ 264.143(a) through (f)).

459.    Since at least the December 9, 2003 and November 18, 2004 CEIs, and the December 16,

2004 SI, and continuing through at least the date of the filing of this Complaint, Defendant had

not established financial assurance for closure of its hazardous waste unit (surface impoundment)

at its South Pierce Facility in violation of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.143(a)).

460.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of

RCRA, 42 U.S.C. § 6928(a), and the § 403.727, F.S. for each day that it failed to establish

adequate financial assurance for closure of its South Pierce surface impoundment.

### *xlvii.   Forty-Seventh Claim for Relief*

### *(Failure to Prepare an Adequate Cost Estimate for Post-Closure Care)*

461.    The allegations in Paragraphs 1 through 36 and 425 through 460 and are realleged and

incorporated herein by reference.

462.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(b)), each owner or operator

of disposal facilities, piles, surface impoundments, tank systems and containment buildings, must

prepare a cost estimate for post-closure care of its facility to meet the requirements of F.A.C.

Rule 62-730.180(1) (40 C.F.R. § 264.144) (Cost Estimate for Post-Closure Care).

463.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.144(a)), the owner or operator of

a disposal surface impoundment required under 40 C.F.R. § 264.228 to prepare a contingent

closure and post-closure plan, must have a detailed written estimate, in current dollars, of the annual cost of post-closure monitoring and maintenance of the facility in accordance with F.A.C. Rule 62-730.180(1) (40 C.F.R. §§ 264.117 through 264.120, and 40 C.F.R. § 264.228).

464.    Since at least the December 9, 2003 and November 18, 2004 CEIs, and the December 16, 2004 SI, and continuing through at least the date of the filing of this Complaint, Defendant did not have an adequate detailed written estimate, in current dollars, of the annual cost for post-closure monitoring and maintenance of its South Pierce Facility in accordance with the applicable post-closure care regulations set forth at F.A.C. Rule 62-730.180(1) (40 C.F.R. §§ 264.117 through 264.120, and 40 C.F.R. § 264.228).

465.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and the § 403.727, F.S. for each day that it failed to prepare an adequate post-closure care cost estimate for its South Pierce surface impoundment.

### xlviii.   *Forty-Eighth Claim for Relief*

#### *(Failure to Establish Adequate Financial Assurance for Post-Closure Care)*

466.    The allegations in Paragraphs 1 through 36 and 425 through 465 are realleged and incorporated herein by reference.

467.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(b)), each owner or operator of disposal facilities, piles, surface impoundments, tank systems and containment buildings are required to meet the requirements of F.A.C. Rule 62-730.180(1) and F.A.C. Rule 62-730.226 (40 C.F.R. § 264.145) (Financial Assurance for Post-Closure Care).

468.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.145), the owner or operator of a hazardous waste unit subject to the requirements of 40 C.F.R. § 264.144 must establish financial assurance for post-closure care in accordance with the approved post-closure plan for its facility

60 days prior to the initial receipt of hazardous waste or the effective date of the regulation, whichever is later.

469.    Since at least the December 9, 2003 and November 18, 2004 CEIs, and the December 16, 2004 SI, and continuing through at least the date of the filing of this Complaint, Defendant was subject to the requirement of F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.145) and had not established adequate financial assurance for post-closure care.

470.    Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to establish adequate financial assurance for post-closure care at its South Pierce surface impoundment

### xlix.    *Forty-Ninth Claim for Relief*

### *(Failure to Establish Adequate Financial Assurance for Third Party Liability)*

471.    The allegations in Paragraphs 1 through 36 and 425 through 470 are realleged and incorporated herein by reference.

472.    Owners and operators of treatment, storage and disposal facilities are required by F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.140(a)), to meet the requirements of 40 C.F.R. § 264.147(a) and F.A.C. Rule 62-730.226 (Liability Requirements).

473.    Pursuant to F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147(a)), the owner or operator of each treatment, storage and disposal facility must establish financial responsibility for bodily injury and property damage to third parties caused by sudden accidental occurrences arising from operations of the facility, and must choose from the options as specified in paragraphs (a)(1) through (6) of 40 C.F.R. § 264.147.

474.    Owners and operators of surface impoundments, landfills, land treatment facilities, or hazardous waste disposal miscellaneous units are required by F.A.C. Rule 62-730.180(1) (40

C.F.R. § 264.140(a)) to meet the requirements of 40 C.F.R. § 264.147(b) and F.A.C. Rule 62-730.226 (Liability Requirements).

475.     F.A.C. Rule 62-730.180(1) (40 C.F.R. § 264.147(b)), require that the owner or operator of each surface impoundment, landfill, land treatment facility, or hazardous waste disposal miscellaneous unit must establish financial responsibility for bodily injury and property damage to third parties caused by non-sudden accidental occurrences arising from operations of the facility, and must choose from the options as specified in paragraphs (b)(1) through (6) of 40 C.F.R. § 264.147.

476.     Pursuant to F.A.C. Rule 62-730.180(1) (C.F.R. § 264.147(b)), owners and operators who are subject to 40 C.F.R. § 264.147(b) may combine coverage for sudden and non-sudden accidental occurrences.

477.     Since at least the December 9, 2003 and November 18, 2004 CEIs, and the December 16, 2004 SI, and continuing through at least the date of the filing of this Complaint, Defendant had not established adequate financial responsibility for third party liability for sudden or non-sudden accidental occurrences using any of the options specified in paragraphs (a)(1) through (6) or (b)(1) through (6) of 40 C.F.R. § 264.147.

478.     .Defendant is liable for injunctive relief and civil penalties pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and § 403.727, F.S. for each day that it failed to establish adequate financial responsibility for third party liability at its South Pierce Facility,  in violation of 40 C.F.R. § 264.147 and Chapter 62-730, F.A.C

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, the United States and the Florida Department of Environmental Protection, respectfully request that this Court:

1.  Order the Defendant to immediately comply with the statutory and regulatory requirements cited in this Complaint;

2.  Assess civil penalties against the Defendant for up to the amounts provided pursuant to Sections 3008(a) and 3008(g) of RCRA, 42 U.S.C. §§ 6928(a) and 6928(g); Section 403.727, F.S; and 28 U.S.C. § 2471, as amended by 31 U.S.C. § 3701; and

3.  Grant the United States and the Florida Department of Environmental Protection such other relief as this Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:


JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530


Date: 9/30/2015

DEBORAH M. REYHER
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044
(202) 514-4113

CIVIL COMPLAINT:        United States et al. v. Mosaic Fertilizer, LLC

FOR THE UNITED STATES OF AMERICA:

      A.  LEE BENTLEY, III
       United States Attorney

      Lacy R. Harwell, Jr.
      Florida Bar No. 714623
      Assistant United States Attorney
      400 N.  Tampa Street, Suite 3200
      Tampa, FL 33602
      Phone: (813) 274-6000
      Fax : (813) 274-6358

OF COUNSEL:

JOAN REDLEAF DURBIN
Senior Attorney
Office of Regional Counsel
United States Environmental Protection Agency
Region 4
61 Forsyth Street, SW, 13th Floor
Atlanta, GA  30303

LESLIE OIF
Attorney-Advisor
Office of Civil Enforcement
Mail Code 2249A
United States Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

CIVIL COMPLAINT:        United States et al. v. Mosaic Fertilizer, LLC

FOR THE FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION:

Date:  9-30-15

Fw

_____

LARRY MORGAN
Senior Deputy General Counsel
Fla. Bar No.  0220205
Florida Department of Environmental Protection
3900 Commonwealth Blvd., M.S. 35
Tallahassee, Florida 32399-3000
Telephone (850) 245-2246
Facsimile (850) 245-2298
Email: larry.morgan@dep.state.fl.us